[Civ. No. 21397.   First Dist., Div. Two.   Jan. 16, 1964.]

BEN ROSNER, M.D., Plaintiff and Respondent, v. PENINSULA HOSPITAL DISTRICT et al., Defendants and Appellants.

116

Carr, McClellan, Ingersoll & Thompson, Luther M. Carr and Frank B. Ingersoll, Jr., for Defendants and Appellants.

Gonick & Schmid and Harry Gonick for Plaintiff and Respondent.

TAYLOR, J.—The Peninsula Hospital District and its board of directors appeal from a judgment granting a writ of mandate directing them to consider the respondent's application for admission to the medical staff of Peninsula Hospital. The sole contention on this appeal is that the trial court erred in holding that malpractice insurance was not a proper requirement of admission under section 32128 of the Health and Safety Code.

The facts are as follows: The Peninsula Hospital is maintained by the Peninsula Hospital District, a governmental entity, functioning under The Local Hospital District Law (Health & Saf. Code, § 32000 et seq.). The respondent Dr. Rosner, is a physician and surgeon who specializes in thoracic surgery and is licensed to practice in California. In May 1961 Dr. Rosner filed his application for membership on the medical staff of the Peninsula Hospital. At all times thereafter the hospital's board of directors refused to act on the application and on February 26, 1963, adopted an emergency resolution requiring that no surgeon or physician be appointed to the medical staff without proof of his ability to respond in damages for injury to or death of patients treated by him in the hospital either in the form of malpractice insurance in the amount of $100,000 for each occurrence and $300,000 cumulative for any one year period, or a cash deposit of not less than $300,000. No such requirement existed prior to February 26, 1963.

Although the appellants' opposition to the petition stated that Dr. Rosner's application was not processed because no copy of his license to practice in the State of California had been attached, and that all members of the medical staff have been required to provide proof of malpractice insurance as a condition to admission since the Peninsula Hospital first opened its doors, the record is devoid of any evidence to support these allegations. ▪ On appeal, the record must be viewed in the light most favorable to the respondent (*Rony v. Yucca Water Co., Ltd.*, 220 Cal.App.2d 613, 618 [33 Cal. Rptr. 873]) as we are faced here solely with a question of law.

The appellants contend that: 1) since the removal of the rule of sovereign immunity from district hospitals by *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], the requirement that malpractice insurance be carried by each member of a medical staff is a most reasonable requirement and necessary for the proper admin-

istration of a public hospital; 2) the statute requires the rules of a public hospital to be in accord with the minimum standards of private or voluntary hospitals operating in the district; 3) and the situation is analogous to other statutory insurance requirements. We cannot agree.

Section 32128 of the Health and Safety Code, so far as relevant, provides: "The rules of the hospital, established by the board of directors pursuant to this article, shall include: 1. Provision for the organization of physicians and surgeons and dentists licensed to practice in this State who are permitted to practice in the hospital into a formal medical staff, with appropriate officers and by-laws and with staff appointments on an annual basis; 2. Provision that membership on the medical staff shall be restricted to physicians and surgeons competent in their respective fields, worthy in character and in professional ethics, ... 3. Provision that the medical staff shall be self-governing with respect to the professional work performed in the hospital; ... 4. Provision that accurate and complete medical records be prepared and maintained for all patients (medical records to include identification data, personal and family history, ... and such other matters as the medical staff shall determine); and, 5. Such limitations with respect to the practice of medicine and surgery in the hospital as the board of directors may find to be in the best interests of the public health and welfare; provided, that no duly licensed physician and surgeon shall be excluded from staff membership solely because he be licensed by one or the other of the boards mentioned in section 2005 of the Business and Professions Code.[1]

"Said rules of the hospital shall, insofar as consistent herewith, be in accord with and contain, minimum standards not less than the rules and standards of private or voluntary hospitals operating within the district."

The trial court, in a well-reasoned opinion, relied on *Wyatt* v. *Tahoe Forest Hospital Dist.*, 174 Cal.App.2d 709 [345 P.2d 93], and held that a district hospital cannot establish rules for a doctor's admission to staff membership other than those authorized by section 32128 of the Health and Safety Code and is limited, thereby, to matters relating to his competency to practice his profession, his character and professional ethics. Judge Millington concluded that the power to pass the

---

[1]Section 2005 of the Business and Professions Code refers to the Board of Medical Examiners and the Board of Osteopathic Examiners.

emergency resolution here in question does not fall within the purview of the legislative grant. The court in *Wyatt*, emphasizing the indispensability of a hospital to modern medical practice, said " '[T]he nature of a public hospital imposes an actual, although implied, limitation upon the authority of respondent to restrict arbitrarily the use of the hospital by the public, whether physician or patient.' " (P. 714.)[2]

In *Rosner* v. *Eden Township Hospital Dist.*, 58 Cal.2d 592 [25 Cal.Rptr. 551, 375 P.2d 431], the Supreme Court applied this same confined interpretation to section 32128 in holding that a district hospital board could not adopt a standard of *general suitability for hospital practice* as a condition for admission to the medical staff. Chief Justice Gibson, in a careful analysis of that section, said at pages 597-598: "The code section does not refer to general suitability for hospital practice as a condition to membership in a medical staff, and such a requirement does not come within the provision of subdivision 2 that physicians and surgeons must be 'competent in their respective fields.' The quoted term refers only to the ability of doctors to perform the medical and surgical treatments and diagnoses in connection with which they seek to use the hospital; for example, whether a doctor seeking privileges with respect to thoracic surgery is competent to engage in such surgery. *Subdivision 2 does not contain any language authorizing the board to adopt standards of fitness in addition to those enumerated therein* [Italics supplied.]

"Nor does subdivision 5 of section 32128 authorize the board to adopt a standard of suitability for hospital practice as a condition for admission to the medical staff. Each of the first four subdivisions of the section relates to a different matter. The language of subdivision 5 authorizing the board to adopt limitations on the 'practice of medicine and surgery in the hospital' relates to a fifth subject, namely, the regulation by the board of the practice of medicine and surgery in the hospital by doctors admitted to staff membership. The quoted language is not to be construed as permitting the board to adopt additional requirements as to the subject matters dealt with in the four preceding subdivisions and does not relate to admission to staff membership, the subject dealt

[2]For a discussion of the rules applicable to private and public hospitals see 24 A.L.R.2d 850, and note that even a private hospital may be compelled to admit a licensed physician (*Greisman* v. *Newcomb Hospital* (1963) 40 N.J. 389 [192 A.2d 817, 821]).

with in subdivision 2. Where the Legislature has intended to permit the adoption of supplemental requirements with respect to a subject dealt with in the first four subdivisions, it has expressly said so, as is shown by subdivision 4, which specifies the information to be included in medical records and contains an express provision that additional information may be required.

"The fact that subdivision 5 is followed by a proviso prohibiting exclusion of a doctor from staff membership because of the type of license he holds does not militate against this construction of the subdivision. The proviso is not part of subdivision 5 but is a separate provision which limits any subdivision of the section to which its terms can be applied. Although the language of the proviso is directed toward the exclusion of doctors from staff membership (the subject dealt with in subdivision 2), the general purpose of the proviso is broader, i.e., the prevention of discrimination against osteopaths with respect to hospital practice. Making the proviso part of subdivision 2 would not prevent discrimination against osteopaths by means of a regulation under subdivision 5 prohibiting the practice of osteopathy in the hospital. The position of the *proviso* after subdivision 5 does not show that the *subdivision* relates to membership on the medical staff but makes it clear that discrimination by a regulation under that subdivision is also prohibited."

The Supreme Court went on to point out that the refusal of access to a district hospital could, as a practical matter, have the effect of denying to a licensed doctor qualified to practice in California the right to fully exercise his profession, particularly in the case of a surgeon who cannot practice his profession except in a hospital.

█ Appellants argue that the rule they have adopted requiring malpractice insurance is not so vague and ambiguous as to provide a substantial danger of arbitrary discrimination, like that struck down in *Rosner* v. *Eden Township Hospital Dist.*, *supra*. On the contrary, malpractice insurance can be denied to the doctor by private insurance companies for arbitrary or even whimsical reasons, altogether unrelated to his professional competency, and the alternative requirement of a $300,000 cash deposit is obviously prohibitive for the average practitioner.

█ The appellants contend that in view of the abolition of the doctrine of sovereign immunity as applied to a hospital district in *Muskopf* v. *Corning Hospital Dist.*, *supra,* the

action of the hospital board in this case was necessary to the district's economic welfare and should be upheld as a proper exercise of authority under subdivision 5 of section 32128.[3] The ruling of the Supreme Court in *Rosner* v. *Eden Township Hospital Dist., supra,* limiting the rules of admission to matters of professional competency, character and professional ethics precludes any such extended interpretation.[4]

Furthermore, the resolution in question could not be justified as permissible under the general police power, as a district hospital board is not a constitutional legislative body (*Frost* v. *City of Los Angeles,* 181 Cal. 22, 28 [183 P. 342, 6 A.L.R. 468]; *deAryan* v. *Butler,* 119 Cal.App.2d 674, 681 [260 P.2d 98]).

We are not persuaded by appellants' argument that the last paragraph of Health and Safety Code section 32128 would require the malpractice insurance resolution if a similar rule had been adopted in neighboring private hospitals. The interpretation of that section by the Supreme Court in *Rosner* v. *Eden Township Hospital Dist., supra,* would lead us to conclude that any action taken pursuant to the last paragraph thereof would be limited in scope by the previous five rules contained therein and would not justify requirements for staff membership unrelated and in addition to those specified in rule 2. The use of the words "said rules" and "insofar as consistent herewith" in the last paragraph of section 32128 lend support to this conclusion.

Appellants next argue that the instant case is analogous to workmen's compensation and unemployment insurance. The analogy is inappropriate as wherever insurance is required by law, there is a commensurate statutory provision guaranteeing that every person required to carry such insurance can obtain it (for example, see Const., art. XX, §21; Lab. Code, §57.5; Ins. Code, §11770 et seq., relating to the State Compensation Insurance Fund, and Ins. Code, § 11620 et seq., outlining the assigned risk plan for automobile liability in-

---

[3]The California Law Revision Commission's 1963 study on sovereign immunity indicates that the liability resulting from the Muskopf case may not be unduly extensive or burdensome and that many public entities already carry liability insurance (5 C.L.R.C. 379-385, 400-401).

[4]*Muskopf* v. *Corning Hospital Dist.* was decided in January 1961; *Rosner* v. *Eden Township Hospital Dist., supra,* (not cited by the appellants) in October 1962; the appellants' "emergency resolution" was adopted on February 26, 1963.

surance). There are no such protective statutory provisions in the field of professional malpractice insurance.

Furthermore, under the facts here presented, whether any doctor could ever become a member of the medical staff depends upon conditions beyond the control of the district. By the adoption of the emergency resolution, the hospital has unlawfully delegated to the insurance companies a determination as to what physicians may use its facilities. A power to determine who shall have the right to engage in an otherwise lawful enterprise may not be delegated to a private body unless such power be accompanied by adequate safeguards which afford the applicant protection against arbitrary or self-motivated action (cf. *Group Health Insurance of New Jersey* v. *Howell* (1963) 40 N.J. 436 [193 A.2d 103, 108]; *Illinois Hospital Service, Inc.* v. *Gerber* (1960) 18 Ill.2d 531 [165 N.E.2d 279]; *Ware* v. *Benedikt* (1955) 225 Ark. 185 [280 S.W.2d 234]).

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.