Dr. William J. POLLOCK, Individually and on behalf of all others similarly situated,

v.

METHODIST HOSPITAL et al.

Civ. A. No. 74-3060.

United States District Court, E. D. Louisiana.

Feb. 7, 1975.

**394**

L. Walker Allen, II, Louis R. Koerner, Jr., Koerner & Babst, New Orleans, La., for plaintiff Dr. William J. Pollock.

William S. Penick, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for defendants Methodist Hospital, St. Paul Fire & Marine Ins. Co., and Gillis, Hulse & Colcock, Inc.

Charles E. McHale, Jr., New Orleans, La., for defendant Methodist Hospital.

HEEBE, Chief Judge.

This cause came on for hearing on a previous day on the motion of defendants, Methodist Hospital, St. Paul Fire & Marine Insurance Company and Gillis, Hulse & Colcock, Inc., to dismiss for failure to state a claim upon which relief can be granted.

The Court, having heard the arguments of counsel and having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly, treating defendants' motion as one for summary judgment for reasons discussed below,

It is the order of the Court that the motion of defendants, Methodist Hospital, St. Paul Fire & Marine Insurance Company and Gillis, Hulse & Colcock, Inc., for summary judgment, be, and the same is hereby, granted.

### REASONS

Defendant Methodist Hospital adopted a requirement that each physician practicing in the hospital provide a certificate of insurance in the amount of at least $1,000,000 from his insurance carrier to the hospital, stating the limits of liability carried and that the policy will not be cancelled without ten days written notice to the hospital. Any physician not complying with this requirement by October 1, 1974, was to be suspended from the hospital staff until such time as he furnished the requisite certificate to the hospital.

Plaintiff, Dr. William J. Pollock, a physician practicing at Methodist Hospital, did not submit the insurance statement. He was initially suspended from the hospital on October 1, 1974, but that suspension was revoked pending a hearing at which Dr. Pollock, accompanied by counsel, was invited to submit statements and evidence in his behalf. That hearing was held on October 11, 1974, before a special committee of the board of directors of the hospital. Following

the hearing, the board of directors again suspended his medical practice privileges effective October 23, 1974.

Plaintiff has brought suit against the hospital, St. Paul Fire & Marine Insurance Company, its insurer, and Gillis, Hulse and Colcock, Inc., the hospital's insurance agent. He alleges causes of action for violation of his civil rights, 42 U.S.C. § 1981 *et seq.*, for antitrust violations under the Sherman Act, 15 U.S.C. §§ 1, 2, and for violations of certain state laws prohibiting unfair competition, which he urges the Court to consider in exercise of its pendent jurisdiction. He also seeks to represent a class comprised of those physicians who are presently serving or have served on the medical staff of the defendant hospital. All the defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, or alternatively, to deny the maintenance of a class action. Because both parties have relied on matters outside the pleadings, we treat the motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. Civil Right Cause of Action

Although plaintiff's complaint cites several different sections of the civil rights statute in shotgun fashion, only the cause of action under 42 U.S.C. § 1983 need be seriously considered. The provisions of 42 U.S.C. §§ 1981, 1982, have no relevance to this suit, and the actions of the defendants are a far cry from the type of class-based discrimination required for conspiracies to be cognizable under 42 U.S.C. § 1985. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

To state a cause of action under 42 U.S.C. § 1983, plaintiff must first satisfy the state action requirement. Defendants have submitted affidavits from the executive director and treasurer of Methodist Hospital, uncontradicted by plaintiff, stating that the sole federal money which the hospital received was $2.6 million provided under the Hill-Bur-

ton Act, 42 U.S.C. § 291 *et seq.*, to aid in the initial construction of the hospital. This is approximately 36% of the $7.2 million total cost of the hospital grounds, building and furnishings, and slightly more than 50% of the cost of constructing the building alone. Plaintiff does not contend that any additional federal moneys were expended for improvements or additions to the building.

As noted in Barrett v. United Hospital, 376 F.Supp. 791 (S.D.N.Y.1974), the issue of whether federal funding of otherwise private hospitals is sufficient to clothe the activities of the hospitals with state action is one which has split the Circuits. The Court of Appeals for the Fourth Circuit analyzed the provisions of the Hill-Burton Act and concluded that the degree of federal involvement in the hospital activities under that program made out a finding of state action. Simkins v. Moses H. Cone Memorial Hosp., 323 F.2d 959 (4th Cir. 1963). One of the hospitals in that case received only 15% of the total construction costs from the federal program, and neither hospital received a total sum of money equal to that granted to Methodist Hospital. While that case involved allegations of racial discrimination, the same result is of course required in non-racial cases. Sams v. Ohio Valley General Hospital Assoc., 413 F.2d 826 (4th Cir. 1969). District courts in the First and Third Circuits have reached similar results. Bricker v. Sceva Speare Memorial Hospital, 339 F.Supp. 234 (D. N.H.), aff'd 468 F.2d 1228 (1st Cir. 1972); Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970).

Defendants rely primarily on a line of cases in the Second Circuit which hold that there must be, *inter alia*, some nexus between the funding and the particular activity complained of and that the funds must further the unlawful activity in order to find state action. *See* Barrett v. United Hospital, *supra,* and cases cited therein. The Sixth, Seventh, Eighth, and Tenth Circuits also agree that partial federal funding, without more, is not sufficient to invoke state

action. Jackson v. Norton-Children's Hospitals, Inc., 487 F.2d 502 (6th Cir. 1973); Doe v. Bellin Memorial Hosp., 479 F.2d 756 (7th Cir. 1973); Stanturf v. Sipes, 335 F.2d 224 (8th Cir. 1964); Ward v. St. Anthony Hospital, 476 F.2d 671 (10th Cir. 1973).

■ We have found no cases in which this issue has been squarely decided by the Court of Appeals for the Fifth Circuit. However, in Sosa v. Board of Managers of Val Verde Memorial Hospital, 437 F.2d 173 (5th Cir. 1971), the Fifth Circuit held that a county hospital receiving state and federal funds is acting with state action and cited, *inter alia,* the decisions of the Fourth Circuit noted above. In any event, we feel that the better view is that a hospital which receives such a substantial amount of money as that involved here under the provisions of the Hill-Burton Act satisfies the state action requirement of 42 U.S.C. § 1983.

Although plaintiff did not argue the point in his memorandum in opposition to defendants' motion to dismiss or at oral argument, his complaint alleges that the pre-suspension hearing afforded him by the hospital did not comport with the requirements of due process. Complaint, ¶'s 15, 21. We find this claim has no merit.

■ We find that plaintiff has no liberty or property interest sufficient to invoke the due process requirements of the Fourteenth Amendment. While the right to practice an occupation is a liberty interest protected by the Fourteenth Amendment, Shaw v. Hospital Authority of Cobb County, 507 F.2d 625 (5th Cir. 1975), plaintiff is not precluded from exercising that right by the insurance requirements of the defendant hospital. He need only comply with the requirements in order to continue his membership on the hospital staff. *Compare* Shaw v. Hospital Authority of Cobb County, *supra.* This consideration is sufficient to dispose of plaintiff's possible property interest as well.

However, even if a liberty or property interest of plaintiff is implicated, we find the hearing conducted afforded him the process due. Those cases which require full formal hearings prior to adverse governmental action, *e. g.,* Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), all involve disputed factual issues.

Here, by contrast, there are no factual issues which the special committee needed to resolve. Dr. Pollock does not deny that he received proper notice of the insurance requirements and failed to comply with them. He doesn't make any claim for individual relief from the requirement because of a hardship peculiar to him—for instance, inability to obtain insurance—upon which the committee might rule. To the contrary, plaintiff made the rather remarkable claim at the special committee hearing that whether he had malpractice insurance was not pertinent to the issue before the committee. Transcript of the hearing before the Special Committee of the Board of Directors of Methodist Hospital on October 11, 1974, at p. 2.

The sole issue in this case is the legal right of a hospital to suspend a staff physician for failure to comply with its insurance requirements. Dr. Pollock was afforded an informal hearing at which he and his lawyer had an opportunity to state their reasons for disagreement with the requirement and to try to persuade the board either to reconsider the requirement or to come to some compromise. No witnesses formally testified at the hearing, and there was no need for any to do so. Any more formal hearing than the one conducted here would have been a hollow exercise.

■ The recent decision of the Fifth Circuit in Shaw v. Hospital Authority of Cobb County, *supra,* supports this view. The court held that a podiatrist denied staff membership because of a hospital by-law which disallowed podiatrists as a class from such membership had a liberty interest protected by the Fourteenth Amendment and was entitled to a hearing before the Hospital Authority "conforming to minimal requirements of pro-

cedural due process of notice and an opportunity to be heard." Id. at 628. In *Shaw*, the plaintiff physician was allowed to attend a regular executive committee meeting in which he was given some thirty minutes to pass out literature and answer questions. His lawyer was apparently not present at this meeting. In the case at bar, Dr. Pollock was given a full opportunity to be heard before a special committee of the hospital board of directors convened specifically to consider his suspension, his lawyer was present and presented arguments in his client's behalf, and the "intrinsic reasonableness of the regulation [was] the principal matter for inquiry." Id. at 629 (Brown, C. J., concurring). This hearing more than adequately conformed to the requirements of the procedural due process.

■ We turn, finally, to the merits of plaintiff's civil rights claim. The contention of plaintiff, simply put, is that his continued employment as a staff physician at the defendant hospital may not be conditioned upon any considerations other than his professional competence. He does not contend that the $1,000,000 worth of insurance is an unreasonable sum for the hospital to require or that it imposes an undue financial burden upon him. Plaintiff contends that a requirement that a physician carry any amount of malpractice insurance, no matter how small, as a condition of his employment at the hospital is *per se* unreasonable and violates his civil rights. We simply do not agree with that contention.

We note at the outset the limited nature of the federal court's responsibilities:

"The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencum-

bered with irrelevant considerations, a court should not interfere." Sosa v. Board of Managers of Val Verde Memorial Hosp., *supra* at 177.

*See also* Woodbury v. McKinnon, 447 F. 2d 839 (5th Cir. 1971).

Plaintiff cites *Sosa* for the proposition that a hospital may not impose any conditions upon staff membership other than a physician's professional qualifications. We point out to plaintiff that the court in that case took note of, and did not disapprove, the hospital by-laws requiring graduation from an approved medical school, a license to practice medicine in Texas, and a practice within a reasonable distance from the hospital.

The test is one of reasonableness of the regulation, Sams v. Ohio Valley General Hospital Assoc., *supra*. The defendant hospital adopted the insurance requirement for their physicians at the insistence of St. Paul Insurance Company, which required this as a condition of insuring the hospital. The hospital's concern, and that of its insurer, was to make certain that the hospital did not carry the entire burden of a negligent physician's liability. They were concerned that where a physician and the hospital were sued jointly for the physician's malpractice, and a judgment returned against them *in solido*, the physician would be able to share in the payment of the judgment. Requiring its staff physicians to carry insurance and to submit proof to the hospital of that fact is surely a reasonable exercise of financial responsibility on the part of the hospital.

■ Since plaintiff has focused on the reasonableness of an insurance requirement *vel non*, and not on the amount of insurance required, the amount of the premiums which plaintiff would be required to pay does not appear in the record. However, having decided that the requirement of insurance is valid, the hospital must be afforded wide discretion in setting a proper amount.

We note that this requirement is not one which plaintiff is precluded from complying with, and thus does not serve as an absolute bar to his hospital staff membership. *See* Shaw v. Hospital Authority of Cobb County, *supra* (By-law precluding podiatrists from staff membership). Dr. Pollock need only comply with the insurance requirement, which we find to be reasonable, in order to have his staff privileges restored.

Plaintiff relies primarily upon Rosner v. Peninsula Hospital District, 224 Cal. App.2d 115, 36 Cal.Rptr. 332 (Ct.App. 1964), in which a California state court held that a requirement of the defendant public hospital that its physicians carry $300,000 of malpractice insurance as a condition of appointment to the medical staff is not a proper requirement under the provisions of the California Health and Safety Code. That case turns solely on the interpretation of a state statute and has little, if any, relevance in determining whether plaintiff's civil rights were violated.

Plaintiff's reference to the provisions of La.R.S. 37:1301 is similarly inapposite. We are not sitting as a diversity court. Our sole determination is whether, taking all the allegations of plaintiff's complaint as true, it states a cause of action under 42 U.S.C. § 1983. We hold that it does not.

## II.  Antitrust Cause of Action

■  The Court has some difficulty understanding the precise nature of plaintiff's antitrust claims. The complaint simply tracks the language of the Sherman Act, 15 U.S.C. §§ 1, 2, which prohibits contracts in restraint of trade. monopolization, and attempts to monopolize any part of the trade or commerce among the several states. However, we are unable to perceive how the adoption of a requirement that staff physicians carry a minimum level of insurance in any way becomes an antitrust violation.

Perhaps the situation would be different if the hospital required that all the physicians obtain their insurance from a certain company. However, that is not the case here. The requisite amount of insurance from any company would suffice. In fact, the letter dated December 26, 1974, from St. Paul's insurance agent to Dr. Pollock, attached to plaintiff's opposition memorandum and to which plaintiff refers, acknowledges that plaintiff can be insured at lower rates from a competitor company.

Plaintiff makes much of the statement in the December 26th letter that the St. Paul will not allow any physician, once they cancel the St. Paul Company contract, to renew it. This is a far cry from the refusal to deal in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), cited by plaintiff.

Even pretermitting the question of the jurisdictional requirements for the antitrust laws, we conclude that no cause of action under the Sherman Act has been stated. We, thus, decline to exercise pendent jurisdiction over any alleged state antitrust violations.