573 P.2d 491

H. Howard HOLMES, M. D., Appellant,

v.

HOEMAKO HOSPITAL, its Board of Directors, Hospital Administrator, K. S. Ellis, Appellees.

No. 2 CA–CIV 2399.

Court of Appeals of Arizona, Division 2.

April 6, 1977.

Rehearing Denied May 12, 1977.

Review Granted June 1, 1977.

Paul W. Mercer, Phoenix, for appellant.

Lewis & Roca by John P. Frank, Walter Cheifetz, Richard W. Bowers, Phoenix, for appellees.

OPINION

RICHMOND, Judge.

Appellant is duly licensed to practice medicine in Arizona. He appeals from a summary judgment upholding the suspension by appellees of his right to practice in the appellee hospital because he failed to carry available professional liability insurance. Appellees contend their action and the regulation under which appellant's medical staff privileges were suspended are justified as reasonably necessary for the ". . . preservation of the fiscal integrity . . .." of the hospital corporation.

The undisputed facts clearly demonstrate the conflicting interests in this case. On the one hand, the appellee hospital is a private non-profit corporation operating the only hospital serving most of Pinal County, including the city of Eloy. On the other hand, appellant is the only medical practitioner in Eloy and his patients are in a low-income category. Over the years appellant's patients, when hospital care was required, have been admitted to appellee hospital as the only such facility in the immediate area. The medical staff bylaws of the hospital require that:

> "All staff members shall have and maintain insurance of a kind and amount required by the staff and approved by the governing body."

For years the medical staff, with the approval of the hospital's governing board, has required that medical staff members carry professional liability insurance with minimum coverage limits of $250,000.

The insurance requirement was reviewed by the governing board of the hospital in November of 1975 because of a question as to the availability of such insurance coverage, and the board determined to retain the requirement. Among the factors it considered were the following:

(1) That a doctor's failure to carry insurance could impair the doctor's ability to compensate patients for injuries for which the doctor was legally responsible;

(2) That permitting medical staff members to practice without insurance could adversely affect the amount payable by the hospital for its own malpractice insurance or the availability of such insurance to the hospital;

(3) That judgments in malpractice cases could be obtained against several medical staff members jointly and that any uninsured medical staff member might not be able to pay his just share of such a judgment;

(4) That not carrying malpractice insurance could adversely affect patient care in the hospital in that uninsured physicians might avoid participating in the care of patients with serious medical or surgical problems and might be influenced to practice so-called defensive medicine by ordering various tests and procedures that might not otherwise be ordered; and

(5) That professional liability insurance was still then available to members of the medical staff.

About the same time, appellant notified the hospital that his malpractice insurance was about to expire and he did not intend to renew it. He was notified in turn by the hospital administrator that his medical staff privileges would be suspended as of the date of expiration of his insurance. Appellant renewed his coverage, and commenced an action to enjoin the hospital, its board of directors and administrators from enforcing the requirement. When appellant's malpractice insurance again expired in March, 1976, during pendency of the action, and he failed to renew it, his staff privileges were suspended by the hospital's governing board, which first gave him a full and fair opportunity to be heard in the matter.

Both parties filed motions for summary judgment with supporting affidavits. The trial court concluded that it had jurisdiction of the subject matter, and appellees concede on appeal that judicial intervention is proper within the limitations set forth in *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 393 P.2d 926 (1964) and *Peterson v. Tucson General Hosp., Inc.*, 114 Ariz.App. 66, 559 P.2d 186 (1976).

The court found that there were no genuine disputed issues of material fact, and granted appellees' motion, basing its ruling on conclusions that hospitals are subject to potential liability arising out of the claimed malpractice of medical staff physicians and such liability may be imposed jointly upon the hospital as well as the physician; the responsibilities of a hospital's governing board include the responsibility of safeguarding the fiscal integrity of the hospital corporation; and, therefore, the action of appellee hospital's governing board was neither unlawful, arbitrary nor capricious.

At the outset, we think the court properly focused its attention upon the hospital's right of self-preservation rather than the factors found to have been considered by the governing board in November of 1975 in reaching its determination. The speculative possibility that an uninsured physician might practice defensively, or the possible impairment of his ability to compensate patients for injuries resulting from substandard care, is of little relevancy where the alternative for appellant's patients is no hospital care by the physician of their choice, whose professional competency is not being questioned.

In response to appellant's argument that he is willing and able to cover his malpractice exposure with his own financial resources, and that it is economically impossible for him to pay insurance premiums without passing on the cost in his fees to patients who cannot afford the increase, appellees say they ". . . suspect that if he possesses these riches, he could buy insurance." Apparently they would have him

eliminate any risk to his financial resources by making their depletion a certainty. Appellees assert that even if appellant were unable to include his insurance costs in his fees along with all other costs of conducting his practice, the hospital is not required to underwrite his risks. We need not question the assertion because we find it inapplicable to the facts of the case.

The record before the trial court contained a letter from the casualty underwriting manager for the hospital's liability insurer stating that the insurer ". . . does not care whether or not doctors in an insured hospital carry malpractice insurance . . . ." and ". . . that it is not the policy of this Company to require that doctors practicing in an insured hospital carry malpractice insurance as a condition precedent to the Company's providing malpractice insurance for such hospital." Thus the governing board's consideration of the cost or availability of the hospital's malpractice insurance was not material to its decision in November, 1975.

The record also contained appellant's uncontroverted affidavit that he has exercised his staff privileges as an independent contractor, and that the hospital in all his years of practice has recognized the independent nature of the staff physician, thereby precluding vicarious liability of the hospital under *Beeck v. Tucson General Hospital*, 18 Ariz.App. 165, 500 P.2d 1153 (1972). Thus, although there are circumstances under which a hospital has been held liable under the doctrine of *respondeat superior* for a physician's conduct, none is presented by the record here.

■ Nor do we find support for appellees' insurance requirement in the fact that malpractice judgments might be obtained against several staff members jointly and that any uninsured member might not be able to pay his "just share" of such a judgment. Even assuming that this is a matter

of concern to the hospital, as well as other members of its medical staff, there can be no legal determination of one joint tortfeasor's "just share" of a judgment rendered jointly against more than one where, as in Arizona, there is no right of contribution among them.

■ Appellees argue that the hospital might be held liable jointly or severally for patient injuries or death arising out of the malpractice of its medical staff members for failure to supervise the competence of the doctors. *Tucson Medical Center, Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976).

In *Misevch* the Arizona Supreme Court declared:

"The hospital has assumed certain responsibilities for the care of its patients and it must meet the standards of responsibility commensurate with this trust." 545 P.2d at 960.

Any such liability of the hospital would rest on its separate negligence in supervising the competence of the physician, rather than the latter's substandard care, and to require appellant to carry malpractice insurance under this theory would be to require him to underwrite the hospital's risk, rather than the other way around.[1]

From the foregoing, we find that appellant's failure to carry available professional liability insurance while practicing within the appellee hospital, under the undisputed facts of this case, would not require the hospital to underwrite his risks. The insurance requirement has no reasonable relationship to preservation of the fiscal integrity of the hospital corporation, and the action of the governing board in suspending appellant's medical staff privileges was unlawful, arbitrary and capricious.

Our attention has been directed to only three reported cases involving similar requirements. In *Rosner v. Peninsula Hospital District*, 224 Cal.App.2d 115, 36 Cal.Rptr. 332 (1964), under a California statute defin-

1. From appellees' argument it might reasonably be inferred that without the hospital's insurance requirement there would be more rigorous supervision of the medical staff. Closer scrutiny of a physician's competency as an alternative to scrutiny of his malpractice coverage is a possibility deserving consideration alongside other factors related to the standard of patient care in the hospital.

ing the responsibilities of the hospital board of directors, the district court of appeal held that a similar malpractice insurance requirement unlawfully delegated the determination of what physicians might use the hospital facilities to private insurance companies, which might deny malpractice insurance for arbitrary or even whimsical reasons, altogether unrelated to a doctor's professional competency.

A similar requirement was upheld in *Pollock v. Methodist Hospital,* 392 F.Supp. 393 (E.D.La.1975), on the grounds that it was a reasonable exercise of financial responsibility on the part of the hospital.[2] As noted above, we find otherwise on the facts of the instant case.

In *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (U.S.App.Pndg. 1976), the court upheld as a proper legislative exercise of the police power an Idaho statute that required both doctors and hospitals to obtain malpractice insurance as a condition of licensure, on the grounds ". . . that such requirements . . . bear a rational relationship to the health and welfare of the citizens of the state by providing protection to patients who may be injured as a result of medical malpractice and to this extent does not violate the guarantees of due process of law." 555 P.2d at 408. The legislative exercise of the police power under the Arizona Constitution of course is vested in the legislature, and appellees do not argue the grounds for the Idaho court's decision as support for the hospital's imposition of the insurance requirement on physicians who are already licensed by the state and otherwise qualified to practice medicine within the hospital.

In *Peterson v. Tucson General Hosp., Inc.,* supra, this court said:

". . . If the hospital has refused staff privileges on the basis of factual findings supported by substantial evidence and reached its decision by the application of a reasonable standard, i. e. one that comports with the legitimate goals of the hospital and the rights of the individual and the public, then judicial inquiry should end."
559 P.2d at 191.

There may be other circumstances where the requirement that malpractice insurance be maintained as a condition of staff privileges is a reasonable standard comporting with the legitimate goals of the hospital and the rights of the individual and the public, but we do not find them in the undisputed facts of this case.

The judgment is reversed with instructions to enter judgment enjoining appellees from enforcing the requirement that appellant carry professional liability insurance as a condition of maintaining his medical staff privileges in the appellee hospital.

HOWARD, C. J., concurs.

HATHAWAY, Judge, dissenting.

The hospital governing board's requirement of medical malpractice insurance from medical staff members appears to benefit (1) the patients served by the hospital (in the quality of care through avoidance of defensive medical practice and through financial responsibility of the practitioners); (2) the medical staff in that their practice is from a common footing with reference to potential liability risk; and (3) the fiscal integrity of the hospital corporation. Appellant has not established that insurance is unavailable to him, nor do I believe he has shown legitimate reason for his exemption from the medical bylaws. The hospital's policy conforms to the test set forth in *Peterson v. Tucson General Hosp. Inc.,* 114 Ariz.App. 66, 559 P.2d 186 (1976) because the hospital ". . . reached its decision by the application of a reasonable standard, i. e. one that comports with the legitimate goals of the hospital and the rights of the individual and the public . . . ." 559 P.2d at 191.

The court distinguished *Rosner* as turning ". . . solely on the interpretation of a state statute . . . ." 392 F.Supp. at 398.

2. In *Pollock,* the hospital adopted the insurance requirement for physicians at the insistence of the hospital's insurance carrier, which required this as a condition of insuring the hospital.

I believe the insurance requirement is in keeping with the grave responsibilities assumed by the hospital. *Tucson Medical Center, Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976); *Beeck v. Tucson General Hospital*, 18 Ariz.App. 165, 500 P.2d 1153 (1972). I would affirm.