573 P.2d 477

H. Howard HOLMES, M. D., Appellant,

v.

HOEMAKO HOSPITAL, its Board of Directors, Hospital Administrator, K. S. Ellis, Appellees.

No. 2 CA–CIV 2399.

Supreme Court of Arizona, En Banc.

Dec. 9, 1977.

Rehearing Denied Jan. 17, 1978.

Paul W. Mercer, Phoenix, for appellant.

**404**

Lewis & Roca by John P. Frank, Walter Cheifetz, Richard W. Bowers, Phoenix, for appellees and amicus curiae Arizona Hospital Association.

HAYS, Justice.

This matter is before us on a petition to review. The opinion of the Court of Appeals in *Holmes v. Hoemako Hospital*, 573 P.2d 491, from which the review was granted, is vacated.

Appellant doctor, H. Howard Holmes, is duly licensed to practice medicine in Arizona, and does so in the small community of Eloy, in Pinal County. He is in fact the only doctor in Eloy. The only hospital which can, and does, as a practical matter, serve this community is Hoemako Hospital in Casa Grande.

Hoemako is a private, nonprofit corporation whose medical staff bylaws provide that, as a condition of maintaining medical staff privileges,

"[a]ll staff members shall have and maintain insurance of a kind and amount required by the staff and approved by the governing body."

The amount set by the staff and approved by the hospital's Board of Trustees had been for a number of years $250,000 as a minimum for professional liability insurance.

This requirement was reviewed in November, 1975, by the staff and Board of Trustees and retained. The reasons for its retention appear in the record in an affidavit by Keith S. Ellis, Administrator of Hoemako Hospital:

"[T]hat the doctor's failure to carry insurance might impair the doctor's ability to compensate patients for injuries for which the doctor was legally responsible; that permitting medical staff members to practice in the hospital without insurance could adversely affect the amount payable by the hospital for its own malpractice insurance or the availability of such insurance to the hospital; that judgments in malpractice cases might be obtained against several medical staff members jointly and that any uninsured

medical staff member might not be able to pay his just share of such a judgment; that not carrying malpractice insurance might adversely affect patient care in the hospital in that uninsured physicians might avoid participating in the care of hospital patients with serious medical or surgical problems and might be influenced to practice so-called defensive medicine by ordering various tests and procedures that might not otherwise be ordered; and that professional liability insurance was still then available to members of the medical staff."

Administrator Ellis' affidavit was made in support of a motion for summary judgment in an action brought by Dr. Holmes in Pinal County Superior Court. That action sought to enjoin the hospital, Board of Directors and Administrator Ellis, appellees herein, from enforcing the insurance requirement against Dr. Holmes. The summary judgment was eventually granted for the appellees when the trial court found that no material issue of fact was disputed and that, as a matter of law, the hospital and its governing body did not act unlawfully, arbitrarily or capriciously in promulgating the requirement. The Court of Appeals reversed the Superior Court order and enjoined the appellees from enforcing the requirement against Dr. Holmes.

Initially, let us say that the power of the Arizona courts to review the actions of a private, nonprofit hospital is conceded by appellees pursuant to *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 393 P.2d 926 (1964), and *Peterson v. Tucson General Hospital, Inc.*, 114 Ariz. 66, 559 P.2d 186 (App.1976). However, that review must be narrow. *Blende, supra.* It extends to both the procedural and substantive aspects of a matter such as this. *Pinsker v. Pacific Coast Society of Orthodontists*, 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253 (1974). A rule may be arbitrary or capricious because it is itself irrational or because, in applying it to a particular situation, it is being enforced in an unfair way. *Pinsker, supra. See also*

*Blende v. Stanford*, 98 Ariz. 251, 403 P.2d 807 (1965).

This court has previously had the opportunity to review a hospital regulation in *Findlay v. Board of Supervisors of County of Mohave*, 72 Ariz. 58, 230 P.2d 526 (1951). There, we laid out a standard for determining whether a hospital regulation was reasonable or arbitrary: did it pertain to the "orderly management of the hospital and in most instances . . . [was it] . . . made for the protection of patients"? *Findlay, supra,* 72 Ariz. at 65, 230 P.2d at 531. It was also pointed out in that opinion that the procedure in determining whether a rule or regulation has been violated must comport with due process, *i. e.,* notice and hearing.

The undisputed facts of this matter are, in essence, that Dr. Holmes advised the hospital that he was not going to renew his professional liability insurance when it expired. Before his staff privileges were suspended, he was given notice of a hearing and the matters to be considered there. Such a hearing was, indeed, held after which Dr. Holmes' staff privileges were suspended.

The appellant's failure to provide us with a transcript of what transpired at the hearing and the failure to allege the hearing was somehow improperly or unfairly conducted or concluded, precludes us from any other conclusion but that Dr. Holmes was accorded his procedural due process rights and that he was unable to persuade the hearing board that, because of his special circumstances, he should be exempt from this particular requirement.

The procedural review having been examined as well as possible upon the limited record, we next look to the substantive matter of the rule and determine whether it is unlawful, arbitrary or capricious as a matter of law. We think not.

We cannot ignore the realities of modern procedural practice. If a patient is injured while in a hospital, regardless of who is at fault, the hospital will almost always be joined as a codefendant. Despite the outcome of such an action, the hospital must expend valuable financial resources in its own defense, and will, if innocent of wrongdoing, be more likely to recover its expenses from the tort-feasor physician if that physician is insured. If, indeed, some conscientious lawyer decides not to include the hospital in an action where the finger of negligence points directly and solely to the doctor, we can be certain it will be only because the physician does indeed have malpractice insurance.

Nor can we ignore the realities of the situation where the doctor and hospital are found to be joint tort-feasors. We agree that there is no right to contribution between or among joint tort-feasors in Arizona. *Blakely Oil v. Crowder*, 80 Ariz. 72, 292 P.2d 842 (1956); *Chrysler Corp. v. McCarthy*, 14 Ariz.App. 536, 484 P.2d 1065 (1971). Practically speaking, however, it is not an uncommon solution to such joint liability for the insurers of both or all joint tort-feasors to contribute, in settlement or after verdict, to the fund which compensates the victim.

The hospital has the right to take reasonable measures to protect itself and the patients it serves. We cannot say, as a matter of law, that the hospital board's attention to its medical staff's malpractice insurance is unlawful, arbitrary or capricious. As a practical matter, we cannot say it is irrational or unreasonable. Since that must be the extent of appellate review in these cases, absent a factual situation in which an ordinarily lawful rule becomes arbitrary and capricious, the action of the trial court was correct in granting summary judgment.

This is not to say that in this matter an exception to the requirement might not be in order. We are well aware of the fact that the right to follow any lawful vocation or profession is constitutionally protected. *City of Tucson v. Stewart*, 45 Ariz. 36, 40 P.2d 72 (1935); *Meyer v. State of Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). We believe there is a concomitant right of individuals to a

choice of physicians. *See Findlay, supra.* We also realize that in this particular situation the people of Eloy have only one choice of physicians: Dr. Holmes. Unless and until, however, Dr. Holmes provides the hospital and its Board with evidence of good reason why he should not be required to carry professional liability insurance, the courts of this state cannot help him or his patients. He failed, on appeal, to present any facts that show he is unable to afford the insurance or that insurance is unavailable to him. He is, therefore, apparently being prevented from exercising staff privileges by his own choice.

The rule is reasonable on its face. We can envision situations, however, where such a rule would not be reasonable in its application. Then we must remind hospitals and their governing bodies that certain of the powers they exercise are fiduciary powers and must be exercised reasonably, and for the good of the public which they serve.

There is little legal guidance on this issue. Exhaustive research led us to only three cases even similar to this one. *Rosner v. Peninsula Hospital District,* 224 Cal.App.2d 115, 36 Cal.Rptr. 332 (1964), is one, but has since been emasculated by legislation passed by the California Legislature in 1974. *West's Annotated Health & Safety Code,* § 1319. The other two are *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), and *Pollock v. Methodist Hospital,* 392 F.Supp. 393 (E.D.La.1975). We think, however, that the fact situations and legal theory in those cases are sufficiently different from the one before us to lend little guidance, although our results are similar to *Pollock, supra.*

On the record before it, the Pinal County Superior Court Judge was correct in granting appellees a summary judgment. The Court of Appeals opinion is vacated and the Superior Court's order reinstated.

CAMERON, C. J., and HOLOHAN and GORDON, JJ., concur.

STRUCKMEYER, Vice Chief Justice, dissenting.

Because I believe that the action of the Board of Directors of the Hoemako Hospital is arbitrary and unreasonable, I feel compelled to dissent.

The majority correctly and fairly point out that Dr. Holmes is the only doctor in the community of Eloy, in Pinal County, Arizona, and that the Hoemako Hospital is the only hospital to which he can as a practical matter take his patients. The majority opinion does not mention that Dr. Holmes has never been sued for malpractice or that Eloy is an incorporated community of 5,381 people with a percentage of Negro and other minority races of 19% (Census, 1970). The loss of staff privileges by Dr. Holmes means that a substantial number of people will be without the services of the doctor of their choice.

I am satisfied that the Court of Appeals properly decided this case and that its opinion correctly disposed of the problems raised by the litigants. I will, however, touch on a few additional points to which the majority of this Court have addressed themselves.

Since a hospital may not be established without a showing "that a public need exists for its construction" (see A.R.S. § 36–421.B.2(d)), hospitals are, in effect, State established monopolies. The Hoemako Hospital is on lands furnished at the taxpayers' expense by the Pinal County Hospital District pursuant to statute, A.R.S. § 36–1231, et seq. Because the State has created a monopoly which the taxpayers are in part supporting, this Court should hold that if the hospital regulations are attacked as unreasonable, the test should be whether the public needs are best served thereby, not alone whether the hospital may derive some possible benefit.

A hospital regulation which requires a doctor to carry insurance, so that, if the hospital and the doctor are jointly sued, the doctor's insurance will pay part of the loss, results in two premiums to cover one loss— an economically indefensible business practice. Higher medical costs must inevitably

result to the people of Eloy. There will no doubt be some who will not seek needed medical services simply because of the expense.

It is not enough to say that the hospital is protecting the doctor's patients who might be damaged by his lack of skill or care. The hospital has neither a legal nor moral duty to protect the doctor's patients from the doctor. Besides, hospitals have other controls over doctors by which they can be required to keep abreast of and exercise appropriate medical skills. This is but another step down the path of bureaucratic tyranny from which a doctor has no recourse when denied relief by the courts. There is no compelling interest to be served by this regulation. It is unreasonable and oppressive.

I dissent.