614 P.2d 343

Mark I. FELDMAN, M.D., Plaintiff/Appellant,

v.

ST. MARY'S HOSPITAL AND HEALTH CENTER, an Arizona Corporation; Board of Directors of St. Mary's Hospital and Health Center; Ruben Acosta, M.D., Chief of Staff; John and Jane Does, A thru F, Defendants/Appellees.

No. 2 CA–CIV 3560.

Court of Appeals of Arizona, Division 2.

June 19, 1980.

Bilby, Shoenhair, Warnock & Dolph, P. C. by Lina S. Rodriguez, Tucson, for plaintiff-appellant.

Murphy & Hazlett by Thomas M. Murphy, Tucson, for defendants-appellees.

## OPINION

HATHAWAY, Chief Judge.

The primary question presented for our consideration is when a four-week suspension of medical staff privileges begins. This appeal is submitted on stipulated facts and involves the interpretation of St. Mary's Hospital staff by-laws.

Appellant, Mark I. Feldman, M.D., is a licensed physician in the State of Arizona and a member of the medical staff of St. Mary's Hospital and Health Center. The hospital and its medical staff are protected by and subject to the by-laws, rules and regulations of the medical staff of the hospital, published in a 22-page booklet, which sets forth the procedure to be followed for suspension of staff privileges and for review.

On March 15, 1979, pursuant to the hospital's by-laws, St. Mary's executive committee met to review and evaluate appellant's medical staff file and personal behavior. The executive committee approved five specific recommendations, including complete suspension of staff privileges[1] for four

1.     "Article III—Membership

Section 3—Terms of Appointment
Appointments to the Medical Staff shall be made by the Board of Directors at the recommendation of the Medical Staff. Final responsibility for appointment, reappointment, suspension or revocation of an appointment to the Medical Staff will rest with the Board of Directors.

\*     \*     \*     \*     \*     \*

The Board of Directors shall withhold action on any application, refuse to renew an appointment, suspend or revoke an appointment previously made only upon prior recommendation of the Executive Committee.

\*     \*     \*     \*     \*     \*

Section 7—Non-Reappointment or Termination of Privileges
a.   Where termination or curtailment of privileges is recommended, or a requested increase in privileges is not recommended, the reason will be stated in writing. When final action has been taken by the Board of Directors, the results of this action shall be transmitted in writing to the Chief Executive Officer who shall in turn inform the Executive Committee in writing. The Executive Committee shall in turn inform the staff member in writing.
Section 8—Hearing and Appellate Procedure
a.   Upon recommendation of the Executive Committee that  .  .  .  an individual's privileges be reduced, suspended or revoked, the Executive Committee shall so advise the individual in writing by certified, return receipt mail. If the individual objects to, or disagrees with, the Executive Committee recommendations, the applicant shall have a period of thirty days from the receipt of the notice in which to request (in writing by certified, return receipt mail) a hearing. If such a hearing is not requested as prescribed, the recommendations shall be forwarded to the Board of Directors for action.
b.   If within the thirty day period the individual serves notice in writing upon the Chief of Staff requesting a hearing, the Chief of Staff shall promptly appoint five members of the Medical Staff in the same specialty, or in a closely related specialty, who are not members of the Executive Committee to conduct a hearing with the individual present, as to the justification of the recommendation.
c.   The date for the hearing will be within thirty (30) days of the time of receipt by the Chief of Staff of the request for hearing. The individual shall be present at all hearings, unless the individual specifically waives (in writing by certified, return receipt mail) the right of appearance or fails to appear. A majority of the Committee must be present at all meetings. The notification of the individual as to time and place of the hearing shall be by certified, return receipt mail.
d.   At the conclusion of the hearing, the Committee so appointed shall make its findings, and present such findings in writing to the Chief of Staff and send a copy to the individual involved by certified, return re-

weeks beginning April 2, 1979, and notified appellant of its action in a letter dated March 23, 1979, from Dr. E. G. Nagoda, then chief of St. Mary's medical staff.

By a letter of March 27, 1979, appellant, through his attorney, notified Dr. Nagoda of his objections to the executive committee action and requested a hearing pursuant to Article III, § 8 of the by-laws, rules and regulations of the medical staff. Noting the April 2, 1979, effective date of appellant's suspension, the attorney proposed in the letter:

" * * * I believe the effective date of his suspension should be continued until the provisions of Article Three, Section 8 requiring hearings and appeal have been finally concluded. I discussed the holding of the April 2 suspension date in abeyance with Mr. Tom Murphy, and he has advised me that my belief is correct, and that upon the filing of this notice for hearing, the effective date of Dr. Feldman's suspension will be tolled until final determination of this matter pursuant to the hearings and appeal as provided in Article Three, Section 8."

The hearing committee convened and hearing was held on April 16, 1979. By letter dated April 27, 1979, Dr. Ruben Acosta, Chief of Staff, enclosed a copy of the hearing committee recommendations, which included ongoing professional counseling and four weeks suspension of all staff privileges. Dr. Acosta advised appellant of his right, within 30 days, to request a special

meeting of the medical staff to consider the merits of the case.

By letter dated May 2, 1979, appellant, through his attorney, notified appellees' attorney that appellant was analyzing the hearing committee's decision to determine whether he should further contest the matter (the next step provided for the request within 30 days of a special meeting of the medical staff to consider the merits of the case). The letter further stated that:

"In the event we decide the findings and recommendations are fair and consistent with the record presented to the special committee, we will not request a special meeting within the period permitted by the rules, and Dr. Feldman will begin suspension of all his staff privileges for four weeks beginning at that time, which we compute to be June 1, 1979."

Appellees' attorney responded by letter dated May 7, 1979, wherein he disagreed that appellant's privileges would be automatically suspended as of June 1, 1979, expressing the position that the time of imposition of suspension would be determined by the chief of staff and board of directors of the hospital.

By letter of May 14, 1979, appellant's counsel informed appellees that appellant disagreed with appellees' position on the time the suspension was to begin, asserting that the ". . . only suspension which was approved by the special committee was the suspension which began on April 2,

ceipt mail, within thirty (30) days of completion of said hearing. If desired, the involved individual may have called (under provision of Article IX–Section 3) a Special Meeting of the Medical Staff to consider the merits of the case. The request for Special Meeting must be made within thirty (30) days of the individual's receipt of findings of the hearing.
e. If the individual is still dissatisfied with the findings, the individual shall have the right of appeal to the Board of Directors. The request for such appeal to be filed in writing by certified, return receipt mail with the Chief Executive Officer within thirty (30) days of the individual's receipt of findings of the hearing.
f. The Board of Directors shall (upon written notice to the individual by certified, return receipt mail) set a date for the hearing

upon the individual's appeal no later than thirty (30) days from receipt of the request for said appeal. The individual requesting the appeal shall be present at the hearing unless the individual specifically waives this right in writing by certified, return receipt mail, or fails to appear. The findings of the Board of Directors shall be final, if in accordance with recommendations of the Medical Staff.
g. If the findings of the Board of Directors are contrary to the recommendations of the Medical Staff, the matter will be referred to the Joint Conference Committee.
h. The individual shall have the right at each step of the hearing and appeal process to introduce witnesses and evidence, and shall have the right to representation by legal counsel."

1979. The chief of staff set the date for the beginning of the suspension on April 2, 1979, and when Dr. Feldman's appeal procedures from that recommendation expire, the four-week suspension begins." Appellant disputed that anything in the rules permitted the setting of a new date.

By letter of May 29, 1979, appellant's attorney informed the hospital's chief of staff that appellant was satisfied with the report of the hearing committee, would not request a meeting of the medical staff, considered the matter concluded and would begin his suspension by not exercising any of his privileges as a member of the staff starting June 1, 1979. Appellees' counsel replied by letter dated June 1, 1979, hand delivered to appellant's attorney, asserting that the beginning date of the suspension is solely within the discretion of the hospital and would be set by the hospital. Appellant did not perform any medical services at the hospital between June 1, 1979 and July 2, 1979.

By letter dated June 11, 1979, appellees' Chief of Staff, Dr. Acosta, informed appellant that the time for appeal had expired and notified him that his hospital privileges were suspended for four weeks beginning June 25, 1979. The suspension date was set at a meeting of the chief of staff and the board of directors.

Appellant filed a complaint in superior court seeking injunctive relief, restraining and prohibiting the hospital from suspending his staff privileges for four weeks, starting June 25, 1979. A temporary restraining order and order to show cause enjoining and restraining the hospital from suspending appellant's privileges was issued on June 20, 1979. The hearing on why a preliminary injunction should not be entered was set for July 9, 1979, and the parties stipulated to the court that the matter could be decided on each party's motion for summary judgment, which were simultaneously filed and later orally argued to the court. After taking the matter under advisement, the court granted appellees' motion for summary judgment and denied appellant's. Formal judgment was entered on December 19, 1979, hence this appeal. We affirm.

■ Judicial review of the actions of a private hospital are appropriate, albeit that review must be narrow. *Holmes v. Hoemako Hospital*, 117 Ariz. 403, 573 P.2d 477 (1977).

■ Appellant first contends that the April 2, 1979, four-week suspension order was merely stayed until expiration of the time within which he could further pursue his remedies under the hospital by-laws, rules and regulations of the medical staff and that the order became immediately operable upon expiration of that period. As the correspondence discloses, the stay, or continuance of the effect of the suspension, was agreed to by the parties as a matter of necessity in view of the time periods which became available to appellant under the rules for contesting the suspension. Article III, § 3 of the by-laws, rules and regulations, provides that the final responsibility for suspensions rests with the board of directors. The board of directors did not act upon the suspension until appellant decided to pursue the matter no further after the hearing committee stage. Article III, § 8, ¶ h provides:

> "The individual shall have the right at each step of the hearing and appeal process to introduce witnesses and evidence, and shall have the right to representation by legal counsel."

Thus, the fact finding and appellate procedures available to appellant appear to be in the nature of de novo proceedings at each stage. The general rule is that de novo proceedings operate to vacate a prior judgment. 4A, C.J.S. Appeal and Error § 611; Anno., 9 A.L.R.2d 974. Appellant's argument seems more properly addressed to proceedings in the nature of a writ of error which does not annul the judgment but merely suspends it. *Borrow v. El Dorado Lodge*, 75 Ariz. 218, 254 P.2d 1027 (1953); 4A, C.J.S. Appeal and Error § 611. Finding the proceedings in the former category, we conclude that the order of suspension was not automatically enforceable at the expiration of the time available to appellant to

**266**

contest the matter and that the setting of the beginning time for the suspension properly lay within the reasonable discretion of the board of directors of the hospital.

Appellant contends that the hospital must comply with its medical staff by-laws which expressly vest the right to appeal solely in the suspended staff member and makes no provision for approval by the board of directors. As we previously pointed out, Article III, § 3, provides that the final responsibility for the suspension rests with the board of directors. Under this section, the board's power to suspend is to be exercised only upon prior recommendation of the executive committee, which, of course, was the precipitating factor for the appellant's suspension.

Appellant contends that the hospital failed to comply with its own by-laws on June 11, 1979, illegally suspended him for an additional four weeks, and seeks to enforce its by-laws in an "unfair" way. It is argued that the hospital has unilaterally modified the hearing committee's recommendation to suspend him for an additional term. This argument overlaps appellant's prior argument as to the beginning date for the suspension, and the rationale of our rejection of the first argument is dispositive. Appellant asks why the hospital board of directors failed to "review and accept" the original executive committee's April 2, 1979, four-week suspension recommendation. One obvious reason suggesting itself is that appellant's contest of that recommendation foreclosed further action during the period of contest. Another possibility could lie in its acceptance by the suspendee, where that is the case, and the position that further action in such instance is unnecessary. In any event, we consider the question academic and decline to discuss it further.

Appellant finally contends that appellees' exhibits K thru P are irrelevant. Appellees disagree and point out that the record does not disclose that the exhibits were accepted into evidence and considered by the court. Thus, they argue, and we agree, no ruling by the superior court is before us in relation to these exhibits.

Affirmed.

HOWARD and RICHMOND, JJ., concur.