## REW v. UNIVERSITY COMMUNITY HOSPITAL, INC.
### No. 82-12352
Thirteenth Judicial Circuit, Hillsborough County
September 15, 1983

Chris W. Altenbernd, for plaintiff

Kevin K. Broderick, for defendant

JOHN P. GRIFFIN, Circuit Judge

THIS CAUSE came on for hearing upon the motion of the Defendant, UNIVERSITY COMMUNITY HOSPITAL, INC., to dismiss the First Amended Complaint of the Plaintiff, JOHN B. REW, M.D. The Court has reviewed with care not only the Plaintiff's pleadings but also all of the exhibits to the pleadings including the 1982 Restated By-laws of the Hospital, the Medical Staff By-laws, the numerous letters and correspondence, and the minutes and transcripts of proceedings between Dr. Rew and the Hospital. Additionally, this Court has reviewed the memoranda of law submitted by the parties as well as the case law submitted by the parties and has considered their oral arguments.

Upon this review it is apparent that the Plaintiff's pleadings present two issues:

1. Can the Defendant, a private hospital, require the purchase of medical malpractice insurance by staff physicians as a condition to their use of the hospital facilities as staff physicians?

2. Was the termination of Dr. Rew substantially in accordance with the procedures provided by statute, the Restated By-laws of the hospital, and the Medical Staff By-laws and was Dr. Rew afforded due process?

Both of the above-referenced questions can be answered in the affirmative at this juncture within this proceeding. Whether a private hospital can require the purchase of medical malpractice insurance by a staff physician, assuming the truthfulness of all the Plaintiff's allegations, is a question of law. Although there is no appellate law on this subject in the State of

Florida, the Attorney General's Office has issued two opinions confirming that public hospitals have this authority. 1977 Op. Att'y Gen. Fla. 077-91 (August 30, 1977) and 1978 Op. Att'y Gen. Fla. 078-25 (February 21, 1978). Case law in other jurisdictions holds that private hospitals have the authority to require staff physicians to carry medical malpractice insurance. *Pollock v. Methodist Hospital*, 392 F.Supp. 393 (E.D. La. 1975); *Holmes v. Hoemako Hospital*, 117 Ariz. 403, 573 P.2d 477 (Ariz. 1977); *Renforth v. Fayette Memorial Hospital, Association*, 383 N.E.2d 368 (Ind. 1978), *cert. den.*, 444 U.S. 930, 100 S.Ct. 273, 62 L.Ed.2d 178 (1979). It is clear under the case law that a private hospital has the right to take reasonable measures to financially protect both the hospital and the patients it serves. Florida law does not and should not prohibit any hospital from requiring staff physicians to protect both the hospital and the patients with medical malpractice insurance.

Concerning the second question, the Plaintiff's pleadings and exhibits provide detailed information concerning the procedural safeguards afforded Dr. Rew during this controversy. The allegations and exhibits establish that Dr. Rew was provided procedural safegurads substantially in accord with the applicable statutes, hospital by-laws, and medical staff by-laws. *Margolin, M.D. v. Morton F. Plant Hospital Association*, 348 So.2d 57 (Fla. 2d DCA 1977). The pleadings and exhibits reflect that Dr. Rew was approved for renewed membership on the staff of the hospital by the hospital executive committee in December, 1981, conditioned on satisfactory proof of medical malpractice insurance. It is alleged and admitted by Dr. Rew that he did not purchase the insurance.

It is alleged and admitted by Dr. Rew that he received a letter in February, 1982 from the Chairman of the hospital's Board of Trustees requesting proof of insurance. A second letter was sent by the Chairman to Dr. Rew on May 10, 1982 indicating that Dr. Rew would be terminated on June 10, 1982 and would not be reinstated until he provided proof of insurance.

The pleadings and exhibits reflect that the termination date was extended on more than one occasion and Dr. Rew was not actually terminated until late July, 1982. During that interim time period, Dr. Rew and his attorney were allowed to appear before the Executive Committee of the Board of Trustees on June 24, 1982. That body granted an administrative hearing to Dr. Rew before a separate committee on July 2, 1982.

The pleadings and exhibits reflect that Dr. Rew and his attorney did appear before the hearing committee on July 2, 1982. Although Dr. Rew did not present information beyond the letter from his counsel dated June 29, 1982, the exhibits reflect that Dr. Rew was given such an

opportunity. That committee unanimously recommended that the decision to terminate Dr. Rew pending the purchase of malpractice insurance be confirmed.

Thereafter, the exhibits reflect that Dr. Rew and his attorney were given the opportunity to appear before the Board of Trustees of the Hospital and did appear before them on July 19, 1982. The transcript of that meeting is contained in the exhibits.

These pleadings and exhibits fail to state a cause of action concerning a substantial deviation from the procedures required by the Hospital and Medical Staff By-laws and also fail to allege any deprivation of due process. Accordingly,

IT IS ORDERED AND ADJUDGED that the Plaintiff's First Amended Complaint be and hereby is dismissed with prejudice. The Defendant shall go hence without day.