559 P.2d 186

**Sherman H. PETERSON, D. O., Appellant,**

v.

**TUCSON GENERAL HOSPITAL, INC., an Arizona Corporation, and its Board of Trustees, Appellees.**

**No. 2 CA–CIV 2143.**

Court of Appeals of Arizona, Division 2.

Nov. 16, 1976.

Rehearing Denied Dec. 22, 1976.

Petition for Review Denied Jan. 18, 1977.

W. Edward Morgan and Paul T. Willis, Tucson, for appellant.

Merchant, Lohse & Bloom by Ashby I. Lohse, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

Appellant, an osteopathic physician filed suit against Tucson General Hospital alleging that the hospital wrongfully denied his re-application for staff membership. After depositions were taken and interrogatories answered, the hospital moved for summary judgment. The superior court granted the motion and appellant appeals.

Appellant was a member of the staff of Tucson General Hospital from 1959 to 1969. The seeds giving rise to the present litigation were planted during the later years of his staff membership when the hospital continually reprimanded appellant and eventually revoked his staff privileges for his refusal to follow the hospital's rules and regulations.

In May 1972 appellant re-applied for membership on the staff of Tucson General Hospital. Although the credentials committee and the department of general practice recommended the acceptance of appellant's application the executive committee recommended that staff privileges be denied ". . . in view of past performance which was not acceptable . . .." When appellant was notified of the executive committee's recommendation, he requested a hearing before an ad hoc committee of the staff, as provided for in the hospital's bylaws. The committee was appointed and a hearing was held in March of 1973. The ad hoc committee upheld the recommendation of the executive committee to deny privileges on the following grounds:

"1. Dr. Peterson has given us no reason to believe he would, or wanted to practice on the staff.

2. We have no assurance that Dr. Peterson would abide by the rules and regulations of Tucson General Hospital in the future.

3. We have not received a reply to our letter to the Benson Hospital which had requested further information regarding Dr. Sherman Peterson."

Appellant then appealed the decision of the ad hoc committee of the staff to the Board of Trustees which pursuant to the bylaws was to act in an appellate capacity. The Board of Trustees found that there was evidence to support the committee's findings and upheld the decision.

Appellant claims that the hospital's refusal to grant him staff privileges was wrongful because (1) the hospital failed to adopt proper standards for making the determination, (2) the hospital's action was arbitrary and capricious as a matter of law because the board considered his past conduct and (3) the hospital did not treat appellant's application the same as those of other osteopaths who were granted privileges. He further asserts there were factual disputes which precluded the granting of summary judgment.

█ The threshold question which must be answered is when are the rules and acts of a hospital subject to judicial review? The answer depends upon whether the hospital is private, public, or "quasi public". The principal distinguishing feature of a private hospital is that it has the power to manage its own affairs and is not subject to the direct control of a governmental agency. *Silver v. Castle Memorial Hospital,* 53 Haw. 475, 497 P.2d 564 (1972). The public hospital is an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state. A "quasi public" status is achieved if what otherwise would be a truly private hospital was constructed with public funds, is presently receiving public benefits or has been sufficiently incorporated into a governmental plan for providing hospital facilities to the public. *Silver v. Castle Memorial Hospital, supra.*

█ The general rule is that the exclusion of a physician from staff privileges in a private hospital is a matter which ordinarily rests within the discretion of the managing authorities thereof, not subject to judicial review. *Edson v. Griffin Hospital,* 21 Conn.

Sup. 55, 144 A.2d 341 (1958); *Shulman v. Washington Hospital Center,* 222 F.Supp. 59 (D.C. 1963); *Nashville Memorial Hospital, Inc. v. Binkley,* 534 S.W.2d 318 (Tenn. 1976); *Ponca City Hospital, Inc. v. Murphree,* 545 P.2d 738 (Okl. 1976); *Mauer v. Highland Park Hospital Foundation,* 90 Ill. App.2d 409, 232 N.E.2d 776 (1967); *Gotsis v. Lorain Community Hospital,* 46 Ohio App.2d 8, 345 N.E.2d 641 (1974).[1] This general rule does not apply where there is a contention that the hospital failed to conform to procedural requirements set forth in a hospital's constitution, bylaws, or rules and regulations. *Shulman v. Washington Hospital Center, supra.*

█ There is no doubt that as far as public hospitals are concerned the Fourteenth Amendment of the United States Constitution applies and constitutional rights will be enforced by the courts. *Findlay v. Board of Supervisors of County of Mohave,* 72 Ariz. 58, 230 P.2d 526 (1951); *Foster v. Mobile County Hospital Board,* 398 F.2d 227 (5th Cir. 1968).

A growing number of courts have subjected hospital bylaws, constitutions, acts and rules and regulations to judicial scrutiny based upon the definition of "quasi public" set forth in *Silver v. Castle Memorial Hospital,* supra, or on the basis of common law. In *Greisman v. Newcomb Hospital,* 40 N.J. 389, 192 A.2d 817 (1963) the court was concerned with the validity of a hospital bylaw forbidding staff privileges to osteopaths. The plaintiff, an osteopath, had an unrestricted license to practice medicine in the state of New Jersey. He practiced medicine in Vineland which had a population of 10,000. There was only one hospital in Vineland. The judicial council of the medical society of the State of New Jersey had adopted a resolution which declared that it would not be unethical for members to enter into professional association with any person holding a full license as a physician or a surgeon granted by the state board of examiners who adheres to the scientific principles of the American Medical Association and the New Jersey Medical

---

1. See also cases cited in Annot. 37 A.L.R.3d at pp. 659–660.

Society. Other hospitals in the area had admitted osteopathic physicians to their medical staff.

The hospital sought to prevent judicial intervention on the grounds that it was a private hospital. The court, however, held the bylaw to be invalid. Although the court noted that the hospital was a non-profit organization and received a good measure of its funds from public sources and through public solicitation, its decision was based upon other grounds. The court first pointed out that the hospital constituted a virtual monopoly in the area. It then showed how activities which were much less public, such as innkeepers, carriers, etc., had been made subject to judicial scrutiny for the common good since they were "affected with the public interest". The court in *Greisman* relied most heavily upon its prior decision in *Falcone v. Middlesex County Medical Society,* 34 N.J. 582, 170 A.2d 791 (1961) where it struck down an arbitrary membership requirement in the Middlesex County Medical Society. In *Falcone* it had characterized the society as an organization engaged in an activity of public concern and found its power was not unbridled but was to be viewed judicially as a fiduciary power to be exercised in a reasonable and lawful manner for the advancement of the interest of the medical profession and the public generally. The *Greisman* court stated that although *Falcone* was concerned with a medical society rather than a hospital, similar policy considerations apply with equal strength and call for a declaration that the hospital's power to pass on staff membership applications is a fiduciary one since the hospital is publicly dedicated primarily to the sick and injured of Vineland and its vicinity and the public expects its doctors to be able to use that facility.

In the case of *Sussman v. Overlook Hospital Association,* 95 N.J.Super. 418, 231 A.2d 389 (1967) the court followed *Greisman* stating that the board of trustees of a private hospital, private in the sense that it is non-governmental, does have the right to reject an applicant for staff privileges so long as it acts in a fair manner and for a valid reason. The court observed that a board of trustees may reasonably consider the factor of prospective disharmony. It further stated that while the board should provide the applicant an opportunity to appear and present witnesses, it is not essential that he be afforded the rights of cross-examination or to be represented by counsel. All that is required is for the board to be fully informed so that it may make an intelligent, reasonable judgment in good faith upon all the facts presented.

The *Greisman* rationale was followed in *Davidson v. Youngstown Hospital Association,* 19 Ohio App.2d 246, 250 N.E.2d 892 (1969); *Woodard v. Porter Hospital, Inc.,* 125 Vt. 419, 217 A.2d 37 (1966) and *Bricker v. Sceva Speare Memorial Hospital,* 111 N.H. 276, 281 A.2d 589 (1971).

California, in the case of *Pinsker v. Pacific Coast Society of Orthodontists,* 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253 (1974), adopted the *Falcone* rationale in a case involving admittance to a private medical society. In addition to a requirement that the decision of the society be reasonable and not arbitrary or capricious, the court held that an application for membership was to be decided pursuant to the common law requirement of "fair procedure". It termed "fair procedure" as that which provides the applicant with adequate notice of the "charges" against him and a reasonable opportunity to respond.

In some cases receipt of federal funding has resulted in the right to judicial review based on the fact that the hospital is "quasi public". Thus in *Silver v. Castle Memorial Hospital,* supra, the hospital was private but received contributions of funds under the Hill-Burton Act of 1965, 42 U.S.C. Sec. 291, in addition to state funds. The court sanctioned judicial review but carefully limited its opinion to those situations where the hospital has more than nominal government involvement in the form of funding. Other courts have rejected this concept. *Ponca City Hospital, Inc. v. Murphree,* supra.

Arizona has not been silent on the subject of judicial intervention in the affairs of

private associations. In the case of *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 393 P.2d 926 (1964) the court agreed with the reasoning in *Falcone*.[2] The appellant was denied membership in the Maricopa County Medical Society. This resulted in the prevention of his maintenance of staff privileges in the hospitals of Maricopa County since the right to staff privileges depended upon membership in the society. In justifying judicial intervention the court stated:

"The interests in freedom of association and in autonomy for private associations make it desirable to allow private groups to determine their own membership. But when a medical society controls a doctor's access to hospital facilities, then the society's exercise of a quasi-governmental power is the legitimate object of judicial concern." 96 Ariz. at 244, 393 P.2d at 929.

 It is clear that the policy considerations in *Blende* are equally applicable here. Tucson General Hospital is the only osteopathic hospital in Tucson and thus constitutes a virtual monopoly since it is the only hospital in which an osteopathic physician may have staff privileges. We conclude that judicial review is proper. Our review, however, is not broad but is limited. If the hospital has refused staff privileges on the basis of factual findings supported by substantial evidence and reached its decision by the application of a reasonable standard, i. e. one that comports with the legitimate goals of the hospital and the rights of the individual and the public, then judicial inquiry should end. *Blende v. Maricopa County Medical Society*, supra.

 Appellant claims that the hospital had not adopted standards for evaluating his application for staff privileges. The hospital asserts that the relevant criteria for his case are reflected in the findings of the ad hoc committee: (1) the applicant must desire to practice in the hospital; and (2) the applicant must demonstrate a willingness to follow the rules and regulations. We agree with the hospital.

Are there genuine issues of fact which preclude summary judgment? The depositions and an affidavit filed by the hospital in support of its motion for summary judgment show that prior to the withdrawal of his staff privileges in 1969 there was a long history of confrontations between Dr. Peterson and the staff concerning rules and regulations such as failing to keep records up-to-date and failing to seek consultation when consultation should have been required. There was also an issue as to the quality of medical care that he afforded the patients. This led to the signing of written agreements with the hospital that he would follow the rules and regulations but when he failed to do so, his staff privileges were withdrawn. Members of the board of trustees and the ad hoc committee asserted that Dr. Peterson would give them no unequivocal assurance that if his privileges were reinstated he would abide by the rules and regulations of the hospital. They also stated that Dr. Peterson led them to believe that if his privileges were reinstated he did not intend to use those privileges but wanted the reinstatement for other reasons.

Dr. Peterson, in his deposition, stated that the reason for his original dismissal was a failure to keep up with hospital records but that many members of the staff were not able to do so yet their privileges were not withdrawn. He further claimed that he told the executive committee that he was willing to follow the rules and regulations of the hospital. As far as staff privileges were concerned, he said he told the committee that he might never put another patient in the hospital but he did not want over 30 years of medicine to "go

2. The *Falcone* case has been the subject of several law review articles: Note, "The Physician's Right to Hospital Staff Membership: The Public-Private Dichotomy," 1966 Washington U.L.Q. 485; Note, "Exclusion from Private Associations," 74 Yale L.J. 1313 (1965); Note, "Expulsion and Exclusion from Hospital Practice and Organized Medical Societies," 15 Rutg. L.Rev. 327 (1961); Note, "Judicially Compelled Admission to Medical Societies: The *Falcone* case," 75 Harvard L.Rev. 1186 (1962); Note, "Judicial Control of Actions of Private Associations," 76 Harv.L.Rev. 983 (1963).

down the drain". He stated that he did not emphasize the fact that he was not going to use the hospital facilities.

▬ Citing the case of *Wyatt v. Tahoe Forest Hospital District*, 174 Cal.App.2d 709, 345 P.2d 93 (1959), Dr. Peterson claims that the board should not have considered any of his past conduct. In the *Wyatt* case the doctor was charged, in 1936, with unprofessional conduct in that he offered to and did procure an illegal abortion. In 1938 he was charged with the same type of conduct and in 1939 his license to practice was revoked. In 1940, his license was reinstated and he was placed on probation for five years. In 1941 he was reprimanded for violating his probation. In 1942 he was charged with procuring an abortion and unprofessional conduct in that he had been found guilty of maliciously and willfully disturbing the peace. In this latter matter his license was revoked but the decision was reversed by an appellate court. In 1954 a $5,000 judgment was rendered against him for breach of warranty for the failure to remove a uterus. In 1954 his wife sued him for divorce alleging that he was always intoxicated. The court held that he was entitled to a hearing, but in so doing, stated that a physician who had a license to practice medicine cannot be denied the right to practice in a public hospital merely because of past conduct. If he is to be excluded it must be for existing cause. We do not agree with *Wyatt* and decline to follow it. In the light of the responsibility of a hospital to supervise the quality of patient care and the legal liability which may result from a failure to screen and supervise its members, a hospital must be allowed broad discretion in evaluating applications for admission to staff. *Huffaker v. Bailey*, 540 P.2d 1398 (Or.1975).[3]

▬ If we resolve all alleged factual disputes in appellant's favor, summary judgment was still proper. Assuming that he did tell the executive committee and the ad hoc committee that he would follow the rules and regulations of the hospital, that he wanted the restoration of staff privileges in order to clear his record, and that his staff privileges were originally withdrawn for failure to keep proper hospital records, we are still left with the undisputed fact that his privileges were withdrawn for failure to maintain proper records in spite of assurances and written agreements to do so. We cannot say that the maintenance of proper hospital records is unimportant in the care and treatment of patients and the proper administration of a hospital. Considering his past conduct in this regard the board could have reasonably refused staff privileges on this ground alone. The fact that others who are guilty of the same conduct have not been held accountable is of no significance here. *Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir. 1971).

▬ There is nothing in the record that demonstrates the hospital did not treat appellant's application the same as those of other osteopaths who had been granted staff privileges. The only difference in the processing of his application was the consideration of his past conduct while on the staff. His past conduct was pertinent to the board's consideration of whether staff privileges should again be granted.

▬ As the court noted in *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (5th Cir. 1971):

"The evaluation of professional proficiency of doctors is best left to the specialized expertise of their peers, subject only to limited judicial surveillance. The court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered

3. For the potential liability of a hospital see *Tucson Medical Center, Inc. v. Misevch*, 113 Ariz. 34, 545 P.2d 958 (1976); *Purcell v. Zim-* *belman*, 18 Ariz.App. 75, 500 P.2d 335 (1972); *Beeck v. Tucson General Hospital*, 18 Ariz.App. 165, 500 P.2d 1153 (1972).

with irrelevant considerations, a court should not interfere." 437 F.2d at 177.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.