634 P.2d 976

**Lila Eleanor REISWIG,
Plaintiff-Appellant,**

v.

**ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER, an Arizona corporation, and Joseph C. White, Jr. and Jane Doe White, his wife, Defendants-Appellees.**

**No. 1 CA–CIV 4914.**

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 13, 1981.

Rehearing Denied Sept. 30, 1981.

Review Denied Oct. 20, 1981.

Martori, Meyer, Hendricks & Victor by Thomas H. Curzon, Andrew D. Hurwitz, R. Douglas Dalton, Phoenix, for plaintiff-appellant.

Jennings, Strouss & Salmon by Robert L. Johnson, and Fennemore, Craig, von Ammon & Udall by J. Gregory Osborne, Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Judge.

This appeal raises the issue of whether a private hospital's requirement that trainees in cardiovascular surgery possess 48 months of allopathic (M.D.) general surgery residency is unreasonable, arbitrary and capricious when applied to the plaintiff, an osteopathic physician. Corollary to this inquiry the court must determine the extent of judicial review of private hospital regulations.

This action was instituted by plaintiff-appellant, Lila E. Reiswig, D.O., against defendants-appellees, St. Joseph's Hospital & Medical Center (St. Joseph's) and Joseph C. White, Jr., M.D., St. Joseph's Director of Medical Education, seeking both injunctive and monetary relief because of St. Joseph's refusal to allow Dr. Reiswig to work at St. Joseph's as a fellow in cardiovascular surgery under the auspices of the Arizona Heart Institute, Inc. This matter proceeded in the trial court upon an order to show cause why a preliminary injunction should not issue. Following a four-day hearing, the trial court denied Dr. Reiswig's request for a preliminary injunction. Following formalization of the order denying the request for preliminary injunction, Dr. Reiswig has appealed.[1]

The facts underlying this action are that Dr. Reiswig is an osteopathic physician, fully licensed in the State of Arizona to practice medicine and surgery by the Arizona Board of Osteopathic Examiners.

---

1. The trial court did not order the consolidation of the hearing on the preliminary injunction with a trial on the merits under Rule 65(a)(2), Rules of Civil Procedure. The issue of the propriety of a permanent injunction and the claim for monetary relief are still pending in the trial court.

In 1978, Dr. Reiswig was accepted by the Arizona Heart Institute, Inc. (AHI) to be a fellow in cardiovascular surgery. The fellowship program of AHI is a private, one-year program designed to involve fellows in all aspects of cardiovascular patient care. This includes pre-operative workup, responding to emergency calls at St. Joseph's Hospital and AHI, actual performance of open heart surgery under direction, and post-operative care. The AHI program is under the direction of Dr. Edward B. Diethrich, M.D., a well-known cardiovascular surgeon.

To understand St. Joseph's involvement with AHI, some background facts are necessary. In 1971, AHI was formed with Dr. Diethrich as its president. On April 12, 1971, AHI entered into an agreement with St. Joseph's whereby St. Joseph's would construct a cardiovascular medical facility which would be the property of St. Joseph's but would be called "The Arizona Heart Institute." Under this agreement, Dr. Diethrich was appointed by St. Joseph's as medical director of the hospital facility.[2] As medical director, Dr. Diethrich had the responsibility of conducting the hospital training program established to train cardiovascular surgeons.

In 1976, Dr. Diethrich and St. Joseph's drastically altered their relationship. By a memorandum of agreement (referred to by the parties as the "divorce agreement"), St. Joseph's and the corporate AHI severed their relationship and St. Joseph's changed the name of its cardiovascular facility. Two areas of dispute negotiated by the divorce agreement were Dr. Diethrich's right to continue working in St. Joseph's training program and the right of Dr. Diethrich to create his own private training program. As to the continuation of Dr. Diethrich in St. Joseph's training program, the divorce agreement provided: ·

The Hospital agrees that Dr. Diethrich shall have the same rights and privileges as other members of the teaching service

subject, of course, to the program guidelines and protocol.

As to Dr. Diethrich's private training program (through AHI), the parties agreed:

The Hospital will not object to Dr. Diethrich's association of qualified fellows in his own private practice or professional group, provided that said fellows shall have experience and training comparable to that of other physicians in similar training programs at other major cardiovascular institutions, and said fellows must meet the criteria, if any, established for fellows in the Hospital's cardiovascular department.

Subsequently, St. Joseph's adopted criteria for its cardiovascular department which, as found by the trial court, required:

[T]hat participants in Dr. Diethrich's training program, in order to work at St. Joseph's Hospital, must have received, prior to commencement of training with Dr. Diethrich, a minimum of forty-eight (48) months of surgical experience in an allopathic general surgery residency program approved by Liaison Committee on Graduate Medical Education.

It is Dr. Diethrich's private training program under the auspices of his private corporation, AHI, to which Dr. Reiswig was accepted as a fellow. However, since St. Joseph's facilities (and patients admitted to St. Joseph's) were to be used in Dr. Reiswig's training program, St. Joseph's required that Dr. Reiswig meet the requirement of 48 months of allopathic (M.D.) general surgery residency. Dr. Reiswig did not meet this requirement and was denied access to St. Joseph's facilities. This denial effectively prohibits Dr. Reiswig's participating in the AHI fellowship training program.

The testimony at the hearing in this matter established that Dr. Reiswig was not excluded from the program because her formal education was at a college of osteopa-

**2.** As previously indicated, Dr. Diethrich was also and still is a corporate officer of the private corporation known as the Arizona Heart Institute, Inc. St. Joseph's cardiovascular facil-

ity was called The Arizona Heart Institute and is a separate and distinct entity from AHI, the private corporation.

thy.[3] Rather, Dr. White, St. Joseph's Director of Medical Education, testified that Reiswig's post-graduate residency, which was completed primarily at osteopathic hospitals, did not involve the continuum of experience required in the allopathic program to bring the resident to a point, at the end of four years, where the resident is capable of handling major surgical procedures.

Based upon the testimony presented, the trial court made the following pertinent factual findings:

1. Plaintiff, Lila Reiswig, is a qualified osteopathic physician licensed to practice medicine and surgery by the Arizona Board of Osteopathic Examiners.

2. Plaintiff has completed a four year residency program in general surgery at an osteopathic hospital. She is eligible to be certified in the specialty of general surgery by the appropriate osteopathic specialty board.

\* \* \* \* \* \*

8. That defendant hospital's training requirement . . . is not arbitrary or capricious, and is a reasonable standard which comports with the legitimate goals of the hospital and the rights of the individual and the public.

9. That plaintiff, Lila E. Reiswig, D.O., did not, at the time of her application, and does not presently, possess forty-eight (48) months of experience in an allopathic general surgery residency program approved by the Liaison Committee for Graduate Medical Education. The plaintiff's allopathic general surgery training does not exceed fourteen months, some of which was received in programs not approved by the Liaison Committee for Graduate Medical Education.

Based upon these findings, the trial court denied the request for a preliminary injunction and Dr. Reiswig has appealed.

From a procedural standpoint, St. Joseph's first argues that because this is an appeal from a denial of a preliminary injunction, rather than an appeal from a denial on the merits of a permanent injunction, this court's scope of review should be limited to a determination of whether the trial court abused its discretion. *See* 11 Wright & Miller, Federal Practice and Procedure, Civil § 2962, pp. 633–636. While this is the general rule, Wright and Miller go on to point out:

> [I]f the lower court's decision rests on an interpretation of the law rather than on the facts, the appellate court is not as limited in its review and may reverse if it feels that the lower court's view of the law was erroneous.

*Id.* at pp. 636–637.

Here, Dr. Reiswig has conceded the facts to be as found by the trial court but contends that a regulation which, on its face, excludes post-graduate osteopathic training in determining qualifications is arbitrary and capricious as a matter of law. In this case it is clear that the trial court's conclusion of law (that is, that the regulation is not arbitrary or capricious) is inextricably bound up with the entire controversy and therefore this court should review that conclusion. *See Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.,* 299 F.2d 33, 1 A.L.R.3d 752 (2d Cir. 1962). In doing so, however, we will view, in accordance with general principles of appellate review, the facts in a light most favorable to St. Joseph's. *See Sandblom v. Corbin,* 125 Ariz. 128, 608 P.2d 317 (App.1980).

This brings us to the determination of the scope of judicial review of internal regulations of private hospitals. The trial court concluded that judicial review was available but was limited to determination of whether the private hospital's actions were arbitrary and capricious. The trial court obviously relied upon the trilogy of *Peterson v. Tucson General Hospital, Inc.,* 114 Ariz. 66, 559 P.2d 186 (App.1976) (judicial review is

---

3. The testimony established that other osteopathic-trained doctors are in training programs at St. Joseph's.

available, but limited to a determination of whether the regulation is reasonable, *i. e.*, "one that comports with the legitimate goals of the hospital and the rights of the individual and the public"); *Holmes v. Hoemako Hospital*, 117 Ariz. 403, 573 P.2d 477 (1977) (judicial review available but limited to a determination of whether a regulation is "reasonable or arbitrary: did it pertain to the 'orderly management of the hospital and in most instances . . . [was it] . . . made for the protection of the patients'?"); and *Scappatura v. Baptist Hospital of Phoenix*, 120 Ariz. 204, 584 P.2d 1195 (App.1978) (judicial review is available to determine whether hospital followed its own rules and regulations).

St. Joseph's argues that the limited review allowed in *Peterson, Holmes* and *Scappatura* is inapplicable since these cases dealt with the problem of expelling a physician from the exercise of staff privileges, while here the court is reviewing the exclusion of a doctor from a training program. From this premise, St. Joseph's urges that the general review rule, stated in *Scappatura, id.* 120 Ariz. at 208, 584 P.2d at 1199, should apply:

> Generally, the exclusion of a physician from staff privileges at a private hospital is a matter which will ordinarily rest within the discretion of the hospital's administrative authority and is not subject to judicial review.

■ However, this rule is subject to numerous exceptions, particularly where the exclusion or expulsion seriously impairs an individual's ability to pursue his or her occupation. *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 393 P.2d 926 (1964). In such a situation, the power to exclude takes on the attributes of a quasi public power and that power should be exercised so as not to unreasonably bar persons from pursuing their chosen occupation. *Blende v. Maricopa County Medical Society, supra.*

■ Here, Dr. Reiswig has chosen to pursue a career in cardiovascular surgery. Pursuant to that decision, she wishes to become associated with Dr. Diethrich and

AHI. St. Joseph's exclusion of Dr. Reiswig from its training program will seriously impair her ability to pursue her chosen profession. Under these circumstances, the regulation giving rise to exclusion is subject to judicial review. However, that review is limited to a determination of whether the regulation is arbitrary, capricious and unrelated to any legitimate aim of the hospital. *Holmes v. Hoemako Hospital, supra.*

■ We thus reach the issue of whether St. Joseph's regulation requiring all trainees in its cardiovascular facility to possess 48 months of allopathic post-graduate residency is arbitrary and capricious.

Dr. Reiswig's basic contention is that any regulation which purports to draw a distinction between allopathic training and osteopathic training is on its face arbitrary and capricious, citing *Greisman v. Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817 (1963), and *Fritz v. Huntington Hospital*, 39 N.Y.2d 339, 348 N.E.2d 547, 384 N.Y.S.2d 92 (1976). We might tend to agree, if the hospital's regulation sought to exclude physicians based upon the *character* of the training as compared to the *quality* of that training. In Arizona there is no doubt that a doctor of osteopathy is allowed to practice medicine just as a medical doctor is. Compare generally Title 32, chapter 13 (Medicine & Surgery) with Title 32, chapter 17 (Osteopathic Physicians & Surgeons). However, here St. Joseph's regulation looks not to whether the particular doctor is qualified for licensure in the State of Arizona, but rather to whether that doctor possesses the necessary background training to enter into a program designed to develop proficiency in a highly technical field—cardiovascular surgery.

To this end, St. Joseph's adopted an approach which required that fellows possess 48 months of allopathic training in a program approved by the Liaison Committee on Medical Education. This program in surgery contemplates:

> [T]hat there must be a properly organized and progressively graded clinical experience which provides the opportunity under guidance and supervision to grow in

competence by progressive and succeeding stages of responsibility for patient care. Major operative experience and senior/chief responsibility are essential components of surgical education . . . .

The Board requires that a candidate must have completed a "bona fide" senior/chief year of residency in an approved program in general surgery in a manner satisfactory to the Board in order to be considered for admission to the examinations. The senior/chief appointment must be the final clinical year of the program as approved.

American Medical Association Liaison Committee on Graduate Medical Education Directory of Accredited Residencies 1977–8 at pg. 426.

This court should not, in fact cannot gainsay St. Joseph's determination that fellows working in its cardiovascular facility should possess this type of learning experience. This court lacks both the expertise and the inclination to second guess what standards a private hospital may set in determining admission to its training programs. From this standpoint, in absence of evidence to the contrary, we would have to hold that the prerequisite qualifications are reasonable and not arbitrary or capricious. Dr. Reiswig does not really dispute this proposition. Rather, her argument is that the osteopathic residency training she received is "equivalent" to the allopathic standards set by St. Joseph's and it is St. Joseph's unwillingness to accept this equivalency that is arbitrary and capricious.

However, the evidence insofar as Dr. Reiswig in particular is concerned does not support this equivalency. The evidence is clear that Dr. Reiswig did not possess a full year as a senior/chief resident. Her post graduate residency was described as a "hopscotch" rather than a continuum of experience. Further, Dr. Reiswig did not stay in the same program for the last two years and her residency experience in the peripheral vascular system was inadequate.

We need not here decide whether it would be arbitrary and capricious for St. Joseph's to exclude a physician with osteopathic surgical training equivalent to that required by the medical profession's Liaison Committee on Graduate Medical Education. Suffice it to say that Dr. Reiswig's residency experience was unable to meet this standard.

Dr. Reiswig complains that reviewing her residency experience was an afterthought for trial purposes and that she was initially rejected solely because her residency was osteopathic rather than allopathic. Be this as it may, the relief Dr. Reiswig sought was that her application for admission be judged on its merits, rather than based upon labels. In the final analysis, this is exactly what Dr. Reiswig received at the hearing in this matter.

The order of the trial court denying the request for a preliminary injunction is affirmed. The matter is remanded to the trial court for proceedings on the remainder of plaintiff's complaint.

HAIRE, P. J., and OGG, J., concur.