702 P.2d 253

Henry BOCK, M.D.,
Plaintiff-Appellant, Cross-Appellee,

v.

JOHN C. LINCOLN HOSPITAL, an Arizona non-profit corporation,
Defendant-Appellee, Cross-Appellant.

Nos. 1 CA–CIV 6786, 1 CA–CIV 6789.

Court of Appeals of Arizona,
Division 1, Department B.

Jan. 29, 1985.

Reconsideration Denied April 4, 1985.

Review Dismissed July 2, 1985.

Martori, Meyer, Hendricks & Victor, P.A. by Lawrence A. Hammond, Thomas H. Curzon, Phoenix, for plaintiff-appellant, cross-appellee.

Snell & Wilmer by Robert B. Hoffman, Richard K. Mahrle, Phoenix, for defendant-appellee, cross-appellant.

## OPINION

KLEINSCHMIDT, Judge.

The appellant, Henry Bock, M.D., filed suit asking the trial court to enjoin John C. Lincoln Hospital from revoking his hospital privileges. The trial court found in favor of the hospital and this appeal ensued. The case presents a question as to whether the way the hospital applied its method for reviewing the doctor's qualifications complied with fundamental principles of fair procedure. We find that it did not.

Dr. Bock is licensed to practice medicine in Arizona. He specialized in internal medicine. He completed his residency in 1976 and opened an office in a building which he

owns in north central Phoenix. The office is near John C. Lincoln Hospital. Many of the doctor's patients resided in the neighborhood of his office.

At about the same time that he began practice, Dr. Bock applied to the hospital for the privilege of admitting patients and serving as a consultant in internal medicine in the hospital's Department of Medicine. He received provisional privileges and began to admit patients. The hospital conditioned the doctor's privileges on a review of his first ten admissions by other doctors on the staff. A reviewing physician generally reads a patient's chart and writes a critique of the treating physician's performance in the form of an observation report. These observation reports are submitted to a departmental committee composed of doctors practicing in the same general field as the doctor whose work is under review. The committee recommends that full, unobserved privileges be granted or denied.

For reasons that are unclear, the hospital did not review Dr. Bock's first ten admissions. The doctor practiced for two years with provisional privileges before the observation reports, which were used to review his performance, were compiled. During that time he admitted over 100 patients to the hospital. A substantial portion of his hospital practice during that period was derived from consultations. In 1979, after a series of hearings, Bock's privileges were revoked. Thereafter, his consultations dropped from approximately seventy in 1977 to one or two by 1981.

■ The threshold question is whether the hospital's procedure for determining admitting privileges is subject to judicial review. The hospital contends that it is not. It concedes that the test of whether judicial review is appropriate is whether a refusal to allow privileges will seriously impair a doctor's ability to pursue his profession. This test is derived from *Reiswig v. St. Joseph's Hospital & Medical Center*, 130 Ariz. 164, 634 P.2d 976 (App.1981). In that case all that the doctor showed was that as the result of an alleged deficiency in education and experience she was ex-

cluded from a hospital training fellowship. Certainly, Dr. Bock has shown as serious an impairment to his career as did the plaintiff in *Reiswig*.

Even if the *Reiswig* criterion were not satisfied, we would still be justified in reviewing this case. The general rule, as stated in *Peterson v. Tucson General Hospital, Inc.*, 114 Ariz. 66, 559 P.2d 186 (App. 1976), to the effect that the exclusion of a doctor from staff privileges is ordinarily not subject to judicial review, does not apply "where there is a contention that the hospital failed to conform to procedural requirements set forth in a hospital's constitution, bylaws, or rules and regulations." 114 Ariz. at 69, 559 P.2d at 189. Since, as explained below, the hospital breached its own procedural requirements, we have full authority to consider this case.

■ We turn to the question of whether the hospital complied with fundamental principles of fair procedure. The procedures for observation of a doctor's work and review and appeal of staff privileges are found in the bylaws of the hospital corporation and the bylaws of the medical staff. A portion of the staff bylaws is referred to as the "Fair Hearing Plan". As respects Dr. Bock, the system worked as follows:

Following a review of the observation reports the Medical Committee recommended to Bock that he withdraw from the Department of Medicine. Bock declined and the committee voted to recommend that he not be given full privileges. Up to this point no notice or hearing is required by the bylaws and no participation by the doctor under review is contemplated.

The next stage is known as the "informal" or "preliminary" interview held before the Executive Committee. An adverse recommendation of the Medical Committee is sent to the Executive Committee, a body composed of physicians representing all of the disciplines and departments in the hospital. The bylaws require that the Medical Committee's recommendation be transmitted to the Executive Committee in writing

along with all other documentation considered by the Medical Committee in connection with its recommendation. The affected physician is to be notified and "informed of the nature of the circumstances with reasonable particularity." He is to be allowed to meet with the Executive Committee and present information relevant to the circumstances which gave rise to the Medical Committee's recommendation.

On January 29, 1979, Dr. Bock received a letter from the hospital administrator advising him of the Medical Committee's adverse recommendation. With respect to the nature of the circumstances attending the recommendation the letter said:

The Medical Committee indicated the denial recommendation was based on the Committee's review of observed cases required of all new applicants for privileges in the Department of Medicine. Specific charts were Marie Esker (sic) # 5411038 and Gilbert Richardson, # 5385067.

The Executive Committee met one day after Dr. Bock received this letter. Bock objected to the short notice and what he felt was an inadequate explanation of the charges. At the meeting the discussion involved not only the two charts referred to in the letter but the treatment of one of those patients on the occasion of a different hospitalization. This case was not one that had been observed by another doctor and Bock had not reviewed the chart in preparation for the interview.

In response to Bock's questions, the doctor who was attending the Executive Committee meeting as a representative of the Medical Committee told Bock and the Executive Committee that all of the observation reports noted some deficiency in Bock's performance. The accusing doctor told the committee that Bock's charts had been found inadequate by a "multitude of observers" and that many examples in addition to the two charts referred to in the administrator's letter could be cited in support of his statement. At one point he remarked to Bock, "Maybe once, yes, but, Henry, this has been 2 years of repeated observation. There isn't one chart, there [are] 2 charts, 3 charts, 4 charts, 5 charts. They're all like this. They are all like this."

The observation reports, purportedly considered by the Medical Committee, were apparently not transmitted to the Executive Committee and were not in the room during the meeting of the Executive Committee. From all that appears from the record, the observation reports were never reviewed by the Executive Committee. Doctor Bock did not gain access to the reports until after he filed his lawsuit. There are a total of sixteen observation reports. In fact, only two of them are critical of Bock's performance.

The Executive Committee ratified the adverse recommendation of the Medical Committee. Bock was ultimately advised that the reason for the recommendation was that "the Executive Committee has determined that you have failed to demonstrate to the Medical Committee that you are qualified to practice as an Internal Medicine specialist." The letter went on to say that two specific charts, # 46921 and # 39048, were considered representative of Bock's deficiencies. These are not the same two charts referred to in the notice of the Executive Committee meeting provided to Dr. Bock.

Doctor Bock appealed the decision of the Executive Committee to the Judicial Review Committee. This committee consisted of a panel of four doctors. A fifth doctor attended as a representative of the Executive Committee. This was not the same physician who had represented the Medical Committee at the interview before the Executive Committee. At the hearing before the Judicial Review Panel, the Executive Committee's representative summarized the history of the case. He told the panel that a number of observers had made significant criticisms of Bock's work and "two charts were checked on the charts which received critical reviews for further evaluation and these two charts were the charts we're looking at Eskew and Richardson." These were discussed in some detail. No

documentation was forwarded from the Executive Committee to the Judicial Review Committee. The Judicial Review Committee denied Bock's appeal because he had not demonstrated error in the facts presented by the Executive Committee.

The last step in the procedure was an appeal to the Appellate Review Committee, which was composed of five lay members of the hospital's board of directors. The same doctor who had represented the Executive Committee before the Judicial Review Committee appeared at the hearing before the Appellate Review Committee. This doctor again summarized the case. The Committee did not have before it the observation reports or other information upon which the preceding committees had based their recommendations. The Appellate Review Committee concluded that the recommendation was justified and was not arbitrary and capricious.

Doctor Bock claims that his privileges were terminated without a fundamentally fair hearing as required by the common law of Arizona. He also alleges a breach of his contractual rights because the hospital did not comply with its own bylaws with respect to his case. As to his first claim, the appellant argues that the hospital failed in four respects to afford him a proper hearing:

First: The doctor was not permitted to receive and review the evidence against him;

Second: He was not given timely and adequate notice of the charges against him;

Third: The decisionmakers did not receive, and had no opportunity to review, the evidence on which the decision was based, and

Fourth: At no point in the procedure did the hospital have the burden of proving its case.

We will consider each of these claims.

### FAILURE TO DISCLOSE AND PERMIT REVIEW OF THE EVIDENCE SUBMITTED TO THE COMMITTEES

The information imparted to the Executive Committee to the effect that a great

many of the observation reports were critical of Dr. Bock's performance was almost certainly damning. Although he repeatedly requested in a general fashion the documents which the committees considered, the doctor was never allowed, until trial in the superior court, to see the reports. Except for the Medical Committee, whose members may or may not have reviewed the reports, apparently none of the committees actually saw them. The fact that the representations concerning their contents were false demonstrates the critical need for procedures which are fundamentally fair. To permit one side in an adversary proceeding to summarize evidence without producing that evidence, and to prevent the other side from inspecting the evidence, is basically unfair.

The hospital argues that if the observation reports were available for the review of provisional staff members, their usefulness would be undermined and the important process of peer review damaged. Generally speaking that might be true, but the argument fails when the hospital itself uses such reports as evidence against a doctor in a hearing. The point was well made in *Application of Burke*, 87 Ariz. 336, 351 P.2d 169 (1960). There, the State Bar of Arizona's Committee on Examinations and Admissions denied the applicant admission to the bar. The refusal was based on confidential reports the committee had received. The supreme court, in ordering the admission of the applicant, observed:

> We shall not compel the committee to abuse its trust and reveal its sources. This would not only sanction a breach of trust but would dry up its sources and destroy its future effectiveness. However, we cannot allow information of this nature to be used by the committee for the purpose of denying a man due process in so vital a matter as the right to practice his chosen profession.

87 Ariz. at 340, 351 P.2d at 172.

Although the hospital committees in this case had other evidence upon which to base

an adverse decision, the repeated references to the observation reports were obviously important. We will not guess as to what weight the information was given. Fundamental fairness requires that at every stage of the proceedings, after the Medical Committee, that the subject physician have access to the evidence.

## ADEQUACY OF NOTICE

The one day's notice of the meeting of the Executive Committee accorded Dr. Bock is too short to allow for preparation. We won't belabor the point because we doubt that such abbreviated notice will occur again. What is of more concern is the hospital's failure to inform the doctor "of the nature of the circumstances [relating to his supposed deficiencies] with reasonable particularity." The notice of the Executive Committee hearing might have been adequate had the committee confined itself to the matters referred to in the notice. But the committee went beyond those matters. To depart from the matter as to which notice has been given leaves the subject physician totally unprepared to meet the accusations. This, too, is fundamentally unfair. *See and compare Matter of Swartz,* 129 Ariz. 288, 630 P.2d 1020 (1981) and *Sulger v. Arizona Corporation Commission,* 5 Ariz.App. 69, 423 P.2d 145 (1967). The notice of the hearing of the Judicial Review Committee was subject to the same frailty.

## FAILURE TO TRANSMIT RECORD

The proceedings before the Judicial Review Committee appear to be in the nature of a trial while those before the Appellate Review Committee are designed to be a review of the record. Neither party has cited a case which discusses a decision by an appellate tribunal which did not have *access* to the record. It is possible that the Appellate Review Committee had *access* to the record here, even though the record was not transmitted to it. Common sense dictates that fundamental fairness would require *access* to the record. Transmittal of the record up the procedural chain might

be another matter. Certainly we agree with the appellant that no responsible reviewing body would decide a case without a record. To the extent the Judicial Review Committee reviews matters on the record, our observations would apply to it as well.

Since the Appellate Review Committee did not issue its decision until well after it conducted the hearing, we do not know whether or not it considered the record. The hospital does not take issue with the doctor's bare assertion that the committees never reviewed the observation reports. We cannot be certain on this record as to whether or not the doctor was denied fundamental fairness in this respect. We reserve discussion of this issue for our consideration of the claim that the hospital violated its own bylaws.

## THE BURDEN OF PROOF

■ The doctor argues that the burden of demonstrating that the recommendation of the Medical Staff Committee was not justified or that it was arbitrary and capricious was impermissibly placed on him. He relies on *Anton v. San Antonio Community Hospital,* 19 Cal.3d 802, 140 Cal. Rptr. 442, 567 P.2d 1162 (1977) and *Pipkin v. Board of Supervisors,* 82 Cal.App.3d 652, 147 Cal.Rptr. 502 (1978), for the proposition that in proceedings of a disciplinary nature the burden of proving the charges rests on the party making them.

We find no basic flaw in the formal procedures the hospital has instituted. While they contain no specific reference to where the burden of proof lies, when read as a whole, they contemplate that the hospital must prove the allegations it raises. For example, Section 5(h) of the Fair Hearing Plan requires that a representative of the Executive Committee present evidence before the Judicial Review Committee in support of the Executive Committee's recommendation. If an appeal is taken to the board of directors, that body must ultimately determine if the decision was justified. This is not markedly different from what was approved in *Anton,* where the bylaws provided that one of the grounds

for appeal was that the decision was not supported by substantial evidence. As written, the hospital's bylaws do not misplace the burden of proof. If Dr. Bock can indeed be said to have had the burden of proof throughout the hospital proceedings, it was because he was insufficiently notified of the charges and because he was not permitted access to all of the evidence against him. Upon rehearing, these deficiencies must be eliminated.

## BREACH OF CONTRACT

■ The parties agree that the hospital's bylaws, including the Fair Hearing Plan, constitute a contract between the doctor and the hospital and the hospital does not take issue with the proposition that it is required to follow its own procedures. The doctor maintains that the proceedings constituted a breach of that agreement for three reasons. The first and most important breach was the failure to transmit in writing, up the chain of review, a sufficient statement of the reason for the recommendation and the documentation considered and relied upon. The bylaws, with respect to the action of the Medical Committee, provide:

> The reason for each recommendation shall be stated and supported by reference to the completed application and all other documentation considered by the chairman, all of which shall be transmitted with the report.

The bylaws also require the Executive Committee to consider this written "report and recommendation" and to articulate in writing the reason supporting whatever recommendation it makes with specific reference to the "completed application and all other documentation considered by the committee, all of which shall be transmitted with the report." If the Executive Committee's recommendation is adverse to the physician, he is entitled to a hearing before the Judicial Review Committee, which is required to make a report and recommendation and return the same, together with the hearing record "and all other documentation" to the Executive Committee. The Executive Committee is then to reconsider and finalize its recommendation and if the final recommendation is adverse, the chief executive officer is required to transmit the recommendation to the Appellate Review Committee.

The appellant also says that it is the chief executive officer's duty at this point to transmit all supporting documentation to the Appellate Review Committee. Although the hospital does not dispute this point, our reading of the bylaws and the Fair Hearing Plan does not reveal where this mandate is to be found. We don't consider this gap, if indeed it is one, to be critical because it is clear that under the Fair Hearing Plan the affected doctor, at this stage of the proceedings, is to have access to all material, favorable or unfavorable, that was considered and that the Appellate Review Committee shall review the record created in the proceedings.

Dr. Bock says that critical information was not transferred and that the observation reports, which were available to the Medical Committee, were never sent to or seen by the Executive Committee, the Judicial Review Committee or the Appellate Review Committee. It is clear that the bylaws were breached in this respect. The inadequate notice of the charges and the oral accusations at each stage were no substitute for the statement of reasons and documentation contemplated by the rules. Because this imparted an impermissible fluidity to the proceedings and for the reasons stated in our discussion of the failure to reveal the observation reports, we think the breach was prejudicial. Each committee should have had the benefit of what the preceding group relied on. Even if each committee had access to all the documentation, the failure to transmit the record was a material breach of the bylaws. The transmittal of the record, if not a requirement of fundamental fairness, certainly tends to ensure that the reviewing body actually performs its responsibility and reviews the record insofar as that is necessary to a rational decision.

A related breach of contract occurred when Dr. Bock was not permitted to see the observation reports. Under the Fair Hearing Plan he was expressly entitled to "all other material, favorable or unfavorable, that was considered in making the adverse recommendation or decision against him" at the Appellate Review Committee stage.

Finally, the doctor urges that the hospital departed from its own bylaws by failing to give Dr. Bock adequate notice of the nature of the charges he would have to meet. For the reasons already stated, we agree.

· The hospital responds to all of this by saying that the oral presentations by the physicians were a sufficient substitute for the documentation required by the bylaws, that the fact that two out of sixteen reports were unfavorable is enough to support the recommendations of the various committees, that it is not certain that the doctor who characterized all of the observation reports as unfavorable was in fact talking about observation reports or whether he was talking about other reviews of the doctor's performance, that the observation reports should be privileged, and that nothing would have been added by detailed written reports.

None of the foregoing arguments is persuasive. One, however, deserves further comment. The hospital argues that when, in the Executive Committee meeting, one of the doctors characterized all the charts as deficient, he might have been referring to the re-reviews that were conducted of the Eskew and Richardson charts by a number of observers. A review of the transcript of the hearing before the Executive Committee leads to the conclusion that such is unlikely, or that even if that were the case few people who heard the remark would have interpreted it that way. The doctor referred to *all* the *charts*, not just the Eskew and Richardson charts, mentioned more than two of them, and specifically said he was talking about two years of repeated observation. In any event, even if his remark was restricted to the re-reviews of the Eskew and Richardson charts it was inaccurate because not all of those were unfavorable.

## THE HOSPITAL'S CROSS–APPEAL

■ The hospital's cross-appeal claims that it was error for the trial court to deny an award of damages to the hospital for the procurement of a wrongful injunction. It is the hospital's contention that when the trial court decided that Dr. Bock was not entitled to a permanent injunction, that the hospital was thereupon entitled to recover damages it sustained by reason of the preliminary injunction. In view of the foregoing decision the hospital's appeal is without merit.

■ We conclude with two observations. Hospitals do not have to adopt uniform or specific methods of review as long as the procedures they do adopt are fundamentally fair in concept and application. Nothing in our decision is an expression of opinion as to the substantive merits of whether or not the appellant should have staff privileges.

The judgment of the trial court is reversed. This case is remanded to the trial court with directions to grant the injunctive relief requested unless the hospital, within a reasonable time, grants the appellant the benefit of a hearing process that is fundamentally fair and in compliance with its bylaws. The appellant's request for attorneys' fees is denied as untimely.

GREER and FROEB, JJ., concur.