710 P.2d 1077

**Howard B. LIMMER, D.O.,
Plaintiff-Appellant,**

v.

**SAMARITAN HEALTH SERVICE, an
Arizona corporation,
Defendant-Appellee.**

**No. 1 CA–CIV 7161.**

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 27, 1985.

Review Denied Dec. 3, 1985.

Daughton, Feinstein & Wilson by Allen L. Feinstein, R. Stewart Halstead, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Harry J. Cavanagh, Noreen L. Sharp, Larry L. Smith, Phoenix, for defendant-appellee.

## OPINION

FROEB, Judge.

The issue presented in this appeal is whether an osteopathic physician is entitled to admission to the staff of Desert Samaritan Hospital notwithstanding a hospital by-law which requires certain minimum qualifications for staff membership.

Howard B. Limmer is an osteopathic physician (D.O.), licensed to practice medicine and surgery in the state of Arizona pursuant to A.R.S. § 32–1852. The other school of complete medicine recognized by statute to practice in Arizona is the numerically larger allopathic school of medicine, a practitioner of which (M.D.) is licensed to practice medicine pursuant to A.R.S. § 32–1401, *et seq.* Osteopathic physicians have the same duties, obligations, rights and privileges as allopathic physicians with respect to the diagnosis and treatment of patients. A.R.S. § 32–1852.

Limmer attended the Chicago College of Osteopathic Medicine, a school sanctioned by the American Osteopathic Association (hereinafter AOA), and obtained a doctor of osteopathy degree (D.O.). He served and completed his internship at Tucson General Hospital, which is accredited by the AOA. He thereafter engaged in a family practice of medicine in Tempe, Arizona. Limmer has been certified by the American Osteopathic Board of General Practice. There is

no question that Limmer is an excellent physician of high ethical standards and personal integrity.

Limmer has not been certified, nor has he attempted to be certified, by the American Board of Family Practice, which is one of the primary boards constituting the American Board of Medical Specialties, a unit of the American Medical Association (AMA). Internships at hospitals accredited by the AMA are accredited by the Liaison Committee on Graduate Education (LCGE), which is sponsored by the AMA.

Limmer has a number of patients who live and work in the vicinity of Desert Samaritan Hospital in Mesa, Arizona, and they wish to be treated by Limmer at the hospital. Also, he testified that when one of his patients goes to the emergency room at Desert Samaritan, he or she loses his services because the patient is referred to a member of the Desert Samaritan staff for treatment. He testified this happened 2–3 times a week, resulting in economic loss to him.

Desert Samaritan Hospital is one of several hospitals operated by Samaritan Health Service, a private, nonprofit Arizona corporation. Limmer had on three previous occasions, in 1973, 1977, and 1980, sought admission to staff privileges at the hospital. On the first two occasions, he was not considered because the hospital did not allow osteopathic physicians to be on its staff under any circumstances. However, in 1979 the hospital enacted the following bylaws, Article III, Section 2, Subsection C:

Each physician to be qualified for Staff membership shall be: *A graduate of a school of medicine or school of osteopathic medicine recognized by the American Medical Association or the American Osteopathic Association* at the time of such physician's graduation therefrom; licensed to practice medicine and surgery in the State of Arizona; competent in his respective field or specialty; *Board certified by the American Board of such specialty;* or eligible to take such Board examination if such phy-

sician has practiced for a sufficient length of time to be so eligible; and if not, such physician must have sufficient training and education to qualify to be eligible to take such Board examination at the appropriate time.

If the particular field or specialty of the Department does not have an American Board Certification, then such Department shall establish in the Hospital Rules and Regulations necessary minimum education, training and performance standards for physicians to obtain specific categories and privileges in this Hospital.

*Each physician who is not Board certified as defined in this section shall have completed one or more years of post graduate education as an Intern or Resident to an extent acceptable by each appropriate Clinical Department of this Hospital in programs which were, at the time attended, accredited by the Liaison Committee on Graduate Education which is sponsored by the American Medical Association, the American Hospital Association, the American Association of Medical Colleges, the American Board of Medical Specialties, and the Council of Medical Specialties Society.*

Each Clinical Department shall establish in the Rules and Regulations of this Hospital the number of years of post graduate education as an Intern or Resident and the time within which Board eligible physicians in a particular specialty or field of medical practice must successfully become Board Certified. Any physician failing to comply with such requirements shall automatically have all Medical Staff privileges suspended in all appropriate clinical departments and sections.

The requirement of Board Certification, Board eligibility or the number of years of post graduate education as an Intern or Resident shall not apply to physicians who have Staff privileges at this Hospital as of June 12, 1979. (Emphasis added.)

Limmer's third application was denied for failure to meet either of the two basic requirements of the bylaw, i.e., board certification or AMA internship. A fourth application was denied on the same grounds.

Limmer thereafter filed a complaint, seeking a mandatory injunction that he be appointed to the medical staff of Desert Samaritan and awarded damages. The hospital then moved for summary judgment. Limmer moved for partial summary judgment as to the requested injunction. The trial court granted the hospital's motion and denied Limmer's motion and this appeal followed.

Limmer's first argument is that, under the hospital's own bylaws, he was qualified to be admitted to the staff. This argument is based on Limmer's interpretation of Article III, Section 2, Subsection C, of the bylaws, quoted earlier. Limmer's argument is that the phrase "American Board" refers *either* to the applicable board sanctioned by the AMA, the American Board of General Practice, or to the "AOA Board," the American Osteopathic Board of Family Practice. The hospital's response is that Limmer does not have standing to challenge the bylaws, because such bylaws are a contract between the members of the staff and the hospital, to which Limmer is not a party. In the alternative, the hospital argues that "American Board" refers only to the applicable board sanctioned by the AMA.

■ We have little doubt that, if the bylaws say what Limmer contends they say, he would be entitled to staff privileges at Desert Samaritan Hospital. *See Peterson v. Tucson General Hospital, Inc.*, 114 Ariz. 66, 559 P.2d 186 (App.1976); *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 243, 393 P.2d 926, 928 (1964); *Reiswig v. St. Joseph's Hospital*, 130 Ariz. 164, 634 P.2d 976 (App.1981). Since, however, the bylaws in question are at least ambiguous on the issue raised, it was appropriate for the trial court to consider evidence from Desert Samaritan Hospital

as to what was intended. This evidence made it clear that the hospital intended by its bylaw that the "American Board" referred to is the AMA board. Argument presented by Limmer as to the meaning of the bylaw is unavailing since it is only the hospital board's intent in this instance which will shed light on its meaning. We hold as a matter of law on this record that the bylaw refers only to the American Board of Medical Specialties of the American Medical Association. We thus reject Limmer's first argument and proceed to the question of whether the bylaw is in conflict with Arizona statutes or arbitrarily prevents Limmer from pursuing his professional career.

■ We turn first to the question of whether the hospital bylaw is an unauthorized barrier to admission to the staff of the hospital under Arizona statutes. A.R.S. § 32–1852 provides:

A person holding a license under this chapter to practice medicine and surgery as an osteopathic physician and surgeon shall be subject to all state and municipal laws and regulations pertaining to public health. In diagnosticating, prognosticating and treating any human ills he shall be subjected to all the same duties and obligations and authorized to exercise the same rights and privileges possessed by physicians and surgeons of other complete schools of medicine in the practice of their profession.

Limmer contends this provision mandates that osteopathic physicians be given the same hospital privileges as allopathic physicians. We cannot accept this argument because it goes well beyond the statute itself. A.R.S. § 32–1852 is a broad provision which puts licensed allopathic and osteopathic physicians on the same plane with respect to "diagnosticating, prognosticating and treating human ills." The statute says nothing about hospital staff membership, a subject which is beyond its scope. Standards for admission to the staff of a hospital are not circumscribed by

statute in Arizona.[1] Arizona cases, mentioned in this opinion, have dealt with the subject, but under differing factual situations. Since we find nothing in A.R.S. § 32–1852 which, standing alone, would require the hospital to admit Limmer to staff membership, we turn to whether the court must view the bylaws under Arizona law as arbitrary and capricious.

Limmer contends that osteopathic medicine is recognized as the equivalent of allopathic medicine and points out that it has flourished since before the turn of the century. He reminds the court of the historical antipathy between allopathic and osteopathic physicians. Cf. *Greisman v. Newcomb Hospital*, 40 N.J. 389, 192 A.2d 817 (1963). He points out that many hospitals have physicians on their staff from both schools of medicine successfully treating patients.

The issue before us is, however, not whether one school is equal to the other. The question is whether a hospital may establish experience and training requirements for both osteopathic and allopathic physicians which are based upon programs accredited by the American Medical Association, Liaison Committee on Graduate Education.

At the threshold, it is worthwhile to note that Arizona courts have held that hospitals, even though private, may have a relationship to the public interest in such a way that they must not arbitrarily or capriciously refuse a physician privileges if he or she is qualified. *See Peterson v. Tucson General Hospital, Inc.; Holmes v. Hoemako Hospital*, 117 Ariz. 403, 573 P.2d 477 (1977); *Reiswig v. St. Joseph's Hospital and Medical Center*. The hospital has presented nothing in this case to suggest a review by this court of the bylaw is inappropriate, narrow though such review may be. *See Holmes v. Hoemako Hospital*. We proceed, then, to inquire if the bylaw is arbitrary or capricious.

Arizona courts will not "second-guess" the standards a private hospital sets for its physicians. *Reiswig v. St. Joseph's Hospital*. We upheld the regulation in *Reiswig* which required the physician to have 48 months of allopathic general surgery residency in a program approved by the Liaison Committee on Medical Education. Dr. Reiswig, an osteopathic physician, did not meet this requirement and was denied access to the facilities of St. Joseph's Hospital. Turning aside a contention that the regulation drew an unwarranted distinction between allopathic and osteopathic training, the court in *Reiswig* held:

This court should not, in fact cannot gainsay St. Joseph's determination that fellows working in its cardiovascular facility should possess this type of learning experience. This court lacks both the expertise and the inclination to second guess what standards a private hospital may set in determining admission to its training programs. From this standpoint, in absence of evidence to the contrary, we would have to hold that the prerequisite qualifications are reasonable and not arbitrary or capricious. Dr. Reiswig does not really dispute this proposition. Rather, her argument is that the osteopathic residency training she received is "equivalent" to the allopathic standards set by St. Joseph's and it is St. Joseph's unwillingness to accept this equivalency that is arbitrary and capricious.

In the present case, Limmer did not meet the qualifications required by the hospital's bylaws and failed to demonstrate that they are arbitrary and capricious. That is the extent of our review. No contention is made that Limmer's training and experience are equivalent to the requirements established by the hospital and therefore we do not reach the question of whether equivalency may be shown in order to satis-

1. We note that A.R.S. § 36–435 specifically provides for the use of hospitals by podiatrists under nondiscrimination regulations. No other similar legislation has been brought to our attention. The subject is clearly one of legislativ. concern to the extent hospitals are required to operate in the public interest, a subject not addressed in this opinion.

fy the requirements of the bylaw. We would observe however, that there are very few instances in our legal system where, in the face of a specific requirement of the law, a person may, by evidence, satisfy the requirement through a showing of "equivalency."

As a final point on this issue, we have reviewed cases from other jurisdictions cited by Limmer and find that many arise out of different factual and statutory contexts and are therefore not persuasive. No purpose would be served by analyzing those decisions in this opinion.

Finally, Limmer argues that he was not accorded proper "appellate review" by the Board of Directors of Samaritan Health Service. He contends that the Board did not fully and fairly consider the record, in disregard of the hospital's bylaws.

Article VIII, Section I provides:

> When any applicant to ... the Staff ... receives notice of a recommendation of the Executive Committee that, if ratified by decision of the Board, will adversely affect his appointment to ... the Staff ... he shall be entitled to a hearing before an ad-hoc committee of the Staff. If the recommendation of the Executive Committee following such a hearing is still adverse to the respondent, he shall then be entitled to an appellate review by the Board as provided in the Bylaws of Samaritan Health Service.

As previously noted, Limmer received a hearing before an ad hoc committee. The committee found that Limmer was not qualified and so recommended to the Executive Committee. The Executive Committee recommended denial and the board approved this recommendation and so informed Limmer by letter. This letter also noted Limmer's right to appeal this decision. Subsequently, the Board adopted the view of the Appeals Subcommittee of the Board recommending denial of the application.

 Admittedly, this procedure is somewhat unusual and appears repetitive. However, Limmer has failed to point out in what respect the hospital failed to follow its bylaws in this process. His case was reviewed by the Board and the bylaws were satisfied. Whether or not Limmer's application met the bylaws' qualifications for staff privileges was a straightforward issue which the Board could review on the record. We find no procedural defect in the hospital's handling of Limmer's application and appeal.

 The last issue is whether the hospital is entitled to attorney's fees incurred in defending the appeal. Fees were denied in the trial court. The hospital has not specified the basis of its request for fees and we find none. They are therefore denied.

The judgment of the trial court is affirmed.

CORCORAN, P.J., and EUBANK, J., concur.